# Louisville & Nashville Railroad Co. v. Hall.

*Action by Brakeman against Railroad Company, for Damages on account of Personal Injuries.*

1. *Railroad bridges across public road.*—In the construction of a bridge across a public road, it is the duty of a railroad company to place the structure at such an elevation that trains can safely pass under it with their customary employes; yet it may be placed below the line of absolute safety, when inequality of surface, or other hindrance, occurring naturally, or in the proper construction or grade of the railroad track, renders such elevation impossible, or would greatly incommode the public in the use of the bridge, or unduly increase the expense to the railroad company; but in no case is it permissible to erect the bridge at an elevation so low that brakemen, while in the discharge of their duties on the top of a car, can not avoid danger by bending or stooping.

2. *Same; statutory regulations as to blowing whistle or ringing bell.* The statutory provision requiring the conductor or engineer of a moving locomotive or train of cars, on approaching a public road crossing, to blow the whistle or ring the bell (Code, § 1144), is intended for the protection of persons who are approaching or crossing the track of the road, and has no application to a case in which a brakeman sues for personal injuries, caused by his being struck by the bridge overhead while on top of one of the cars.

3. *Appliances and warning signals for protection of employes.*—In the use of appliances or instrumentalities for the protection of its employes, when approaching a public road crossing spanned by a bridge overhead, such as "whipping straps," a cautionary light on the bridge, &c., the duty and liability of a railroad company are determined by utility and the usage and custom of well-regulated railroads; if many railroads abstain from their use, the failure to use them is not negligence; and their use by a majority of railroads does not require all railroads to use them, nor impute negligence on account of the failure to use them.

[Louisville & Nashville R. R. Co. v. Hall.]

4. *Notice to brakeman of low bridge overhead; contributory negligence.*
When a brakeman is employed on a railroad with which he is not fa-
miliar, and is required, in the performance of his duties, to pass under
a low bridge spanning the track, which, though not high enough to
allow him to pass in an erect position on top of a car, is yet high enough
to meet legal requirements, it is the duty of the railroad company to
give him reasonable notice of the danger; but, if, having been duly
notified, he fails, from inattention, indifference, absent-mindedness or
forgetfulness, to inform himself of the particular facts, or to take the nec-
essary steps to avoid injury—in other words, if he fails to exercise the
care, watchfulness and caution which men of ordinary prudence would
exercise under the circumstances—he is guilty of contributory negli-
gence.

5. *Sufficiency of complaint.*—Where the complaint claims damages on
account of personal injuries sustained by a brakeman in the employ-
ment of a railroad company, by being struck by a bridge overhead
across a public road, while on the top of a car in the discharge of his du-
ties, the complaint must aver that the bridge was erected or maintained
by the railroad company.

6. *Error without injury in ruling on pleadings.*—The sustaining of a
demurrer to a special plea, if erroneous, is error without injury, when
the record shows that the defendant had the full benefit of the same
defense under another special plea.

7. *General notoriety as evidence.*—General notoriety is sometimes ad-
missible evidence, as tending to prove notice of a fact, when notice
thereof is material; but never to prove the existence of the fact itself.

8. *Expert testimony as to railroad appliances.*—The superintendent of
a railroad, who has been employed on railroads for nearly twenty years,
as fireman, brakeman, baggage-master, yard-master, and train-master,
may give his opinion as an expert as to the value and usefulness of
"whipping-straps," or ropes pendent from above, as cautionary signals
to brakemen when the train is approaching a low bridge or tunnel over-
head; but he can not give his opinion as to the prudent management of
the defendant's railroad.

9. *Contributory negligence; burden of proof.*—Contributory negligence,
when pleaded by itself, is an admission of negligence on the part of the
defendant, but not when interposed with the plea of not guilty.

10. *Requisites of charge to jury.*—A charge to the jury should, if pos-
sible, be plain, simple, and easily understood, free from obscurity, in-
volvement, ambiguity, metaphysical intricacy, or tendency to mislead;
and if objectionable on any of these grounds, it should be refused, al-
though, when closely analyzed, it may assert a correct legal proposi-
tion.

APPEAL from the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

This action was brought by William G. Hall, a minor
suing by his next friend, against the Louisville & Nashville
Railroad Company, to recover damages for personal injuries
sustained by plaintiff while in defendant's employment as
brakeman; and was commenced on the 28th Februray, 1888.
The accident occurred on the night of October 26th, 1887,
when plaintiff, being on the top of one of the cars in the
discharge of his duties as brakeman on one of the defend-
ant's freight trains, was struck by the timbers of a bridge
overhead, which spanned a public road near Greenville in

Butler county, and was so badly injured that it became necessary to amputate one of his feet. The cause was tried on issue joined on the pleas of not guilty and contributory negligence, and resulted in a verdict and judgment for plaintiff for $20,000.

The complaint contained eleven counts, but a demurrer was sustained to the 10th and 11th counts. The 1st count alleged that, at and before the time of the injury, the defendant corporation was, as a common carrier, operating a railroad between Montgomery and Mobile, which passed through the corporate limits of the town of Greenville, and crossed a public street or road a short distance south of its depot in the town; that the defendant's charter provided that the company, "in the construction of said road, shall not in any manner obstruct any public road now established, but shall provide convenient passage for travel over said road;" that the railroad "crossed said public road south of Greenville, and the passage provided for travel over said road is by a bridge that crosses above said railroad track;" that the defendant's freight trains "are so arranged that they are stopped by means of brakes, which can only be managed by persons on the top of the cars," and for this purpose brakemen are employed by it, whose duty it is to stand and walk on the top of said trains, and to apply the brakes when signalled to do so; that said bridge across the public road "was, with gross negligence and reckless disregard of the lives of defendant's employes, improperly and dangerously constructed and maintained, in this: that it was constructed and maintained at such a height above the railroad track that there was danger of the brakemen on freight trains being struck by said bridge, and injured or killed;" that the plaintiff, while in the discharge of his duties as brakeman on the top of a freight train, on said October 26, 1887, was struck by the bridge overhead, knocked to the ground, and seriously injured as above stated; that he was at the time ignorant of the dangerous construction and condition of the bridge; and that said dangerous construction and condition of the bridge, at the time of said injuries, "either had not been discovered by the defendant, or else had not been remedied owing to the negligence of the defendant, or of some person in the defendant's service intrusted by it with the duty of seeing that the ways, works, machinery or plant of said road was in proper condition."

The 2d count alleged, in the same words as the 1st, that

the defendant was engaged as a common carrier in operating a railroad between Montgomery and Mobile, "which passes through the corporate limits of the town of Greenville, and crosses a public street or road a short distance south of defendant's depot there, by passing under the same; that the passage provided for travel over said road is by a bridge that crosses above said railroad track;" the dangerous construction of the bridge, the plaintiff's ignorance of its dangerous construction, &c., in substance the same as the first count, except in omitting any averment as to the provision in the defendant's charter. The 3d count was the same in substance, in its averments as to the construction and condition of the bridge, and the injuries suffered by the plaintiff while in the discharge of his duties as brakeman; but it did not allege his ignorance of its dangerous construction, nor that the defect had not been discovered or remedied on account of negligence on the part of the defendant, or of some person in its employment charged with that duty. The 4th count was substantially the same, but with less particularity in its statement of details. The 5th count alleged that, when the train approached the bridge, the engineer, or other person having control of the running of the engine and train, did not blow the whistle, nor ring the bell, one-fourth of a mile before reaching the public road crossing; and that the plaintiff had no notice, and did not know that the train was approaching said crossing. The 6th count alleged that the defendant's railroad "passes through the corporate limits of Greenville, and crosses a public street or road, a short distance south of Greenville, under a bridge that crosses above said railroad track;" that the bridge was of such a height as to be dangerous to any person standing or walking on the top of a train, as brakemen were required to do; that this fact was unknown to the plaintiff, who, in the discharge of his duties as brakeman, had got down to examine a "hot box," and when he climbed up again, the train having suddenly started, he was struck by the bridge overhead as he was walking to his position. The 7th count alleged that the defendant, on the 26th October, 1887, was operating a railroad between Montgomery and Mobile; that the ways, works, machinery or plant, connected with, or used in connection with said road, "was defective in this: that a bridge over said railroad, a short distance below defendant's depot in Greenville, was negligently constructed, so as to be dangerous to persons employed by defendant as brakemen on freight

cars;" that plaintiff was employed as a brakeman on a freight train, and while in the discharge of his duties, on that day, was injured "by reason of said defective condition of said ways," &c. The 8th count alleged that, on the 26th October, 1887, the defendant was operating a railroad between Mobile and Montgomery, "and with one of its cars negligently run over and injured plaintiff." The 9th count alleged that, on said 26th October, 1887, plaintiff was a brakeman on a freight train on defendant's railroad, and was, "by the negligence of the defendant, violently brought into contact with a low bridge, which cut his head, knocked him senseless from the train," &c. Demurrers were sustained to the 10th and 11th counts, and they require no special notice.

The defendant demurred to each count of the complaint, assigning special causes of demurrer numbered consecutively from 1 to 31. The grounds specially assigned to the 1st count were: (1) that said count fails to show that plaintiff exercised reasonable and proper care in the performance of his duties on the train "at the time of the accident alleged to have resulted in his *death;*" (2) that it fails to show a violation of any duty legally owing by defendant to plaintiff in the premises; (3) that it fails to show any negligence on the part of the defendant; (4) that it fails to show that plaintiff had no such knowledge of the existence of said low bridge as would have enabled him, by due diligence on his part, to have avoided the alleged injury and damage;" (5) that it "shows that said alleged danger, due to the construction of said bridge, was a risk incident to plaintiff's employment, for which, when resulting in injury, no action lies;" (6) that it shows "that the alleged injury and *death* was caused by contact of plaintiff with said bridge while in the performance of his duties as brakeman, and fails to show that he was in the exercise of due care and diligence to avoid said accident, or that it could not have been avoided by due care and diligence on his part;" (7) that it fails to show any duty on the part of the defendant with reference to said bridge, whereby it became defendant's duty to maintain said bridge at any particular elevation; (8) that it shows said bridge was a public road bridge, and not a bridge constituting part of defendant's track or road. The same grounds of demurrer were assigned to the 2d count, and also, (10) that it does not show how or why it became necessary for plaintiff to stand or walk on the top of the train while it was passing under said bridge. The same grounds

of demurrer were assigned to the 3d count as to the 1st and 2d, and also to the 4th count, with the additional assignment, (13) that said 4th count does not allege that said bridge was constructed or maintained by defendant. To the 5th count the same grounds of demurrer were assigned as to the preceding counts, and also, (15) that it fails to show how or why it became defendant's duty to notify plaintiff of the approach to said bridge; (16) that it shows that said alleged neglect was the neglect of a fellow-servant of plaintiff, for whose acts in the premises defendant is not liable to plaintiff; (17) that it fails to show any duty on the part of the defendant, requiring the engineer or conductor to blow the whistle or ring the bell on approaching the bridge. To the 6th count the same grounds of demurrer were assigned as to the 1st, 2d, and 4th, and also (19) that said count shows that plaintiff himself was guilty of proximate contributory negligence. To the 7th count the same grounds of demurrer were assigned as to the 1st, 2d, and 4th, and also to the 8th count, with the additional assignments, (21) that it does not show with sufficient particularity the nature of the neglect, or the circumstances under which plaintiff was injured as alleged; and (22) that it fails to allege or show the particular duty which the defendant owed the plaintiff in the premises. To the 9th count the same grounds of demurrer were assigned as to the 1st, 2d, 4th, and 8th, with the additional assignment, (23) that it does not show what right plaintiff had to be on top of the train at the time he was injured. The 24th, 25th and 26th assignments were addressed to the 10th and 11th counts, and require no notice; and the other assignments, addressed to each of the counts except the 8th," were: (27) because it does not show the nature of the defect in the bridge, "or how the defect proximately contributed to the injury and *death* of said plaintiff;" (28) because it is not alleged or shown that said bridge was constructed and maintained by the defendant, or that the defendant was in any way responsible for it; (29) because it is not alleged that defendant knew of said alleged defect in said bridge a reasonable length of time before the alleged injury, in which said defect might have been remedied; (30) because it is not shown that the defect in the bridge exposed plaintiff to unusual or unnecessary danger while in the performance of his duties; (31) because no legal duty on the defendant's part is shown, to construct and maintain the bridge at an elevation sufficient to enable a brakeman, while

standing erect on the top of a car, to pass under it with safety.

The demurrers being overruled, except as to the 10th and 11th counts, issue was joined on the pleas of not guilty and contributory negligence. On the trial, the evidence showed that the railroad bridge crossed the public road on the side of a hill, and was about seventeen feet above the railroad track, the upper end being a few inches higher; and that the average height of freight trains was from eleven and a half to twelve feet. The plaintiff, testifying as a witness for himself, stated that he was in the 19th year of his age, and was making his fourth round trip, as brakeman, on the defendant's railroad between Montgomery and Mobile, when he was injured; that he did not know the road, and did not know where he was at the time he was injured, but afterwards ascertained that it was at the bridge south of Greenville; that he was not acquainted well enough with the landmarks of the road to know at what place he was; that if he knew there was a bridge at Greenville, he would not recognize it unless some one pointed it out to him at the time; that if it had ever been pointed out to him, he did not remember the fact, and that he had never noticed the bridge before. "Witness was then asked by his counsel, if there were any lights on the bridge, or any 'whipping straps,' to give warning of the approach to the bridge;" and answered, "that there were no 'whipping straps,' and he thought there were not any lights." To each part of this question the defendant objected and excepted. The plaintiff further testified, on cross-examination, "that he thought he was told about some low bridges, but did not know exactly where they were, and would not have known them when he got there unless he was told; that he knew there were low bridges on the road, which it would not be safe for a man to pass under while standing on the top of a car, but he would not have known the locality unless it was pointed out to him; that he might have been told there was a low bridge at Greenville, but he did not know when he got to Greenville." J. R. Gollithan, the conductor of the freight train, and two of the brakemen on the train, each testified on the part of the defendant, that they had warned the plaintiff against the danger of the low bridges on the road, and had specially mentioned the bridge at Greenville.

J. R. Porterfield, the town marshal of Greenville, was examined as a witness for the plaintiff, and testified as to the

construction of the bridge by the defendant, its height, the steepness of the ascent to it when coming up the public road, &c.; and he was then asked, "Was it generally reported at Greenville, prior to the injury to plaintiff, that any person in the employment of the railroad company had been killed or wounded by said bridge while in the performance of his duty? What was the general reputation in the community on that subject?" The defendant objected to this question, "(1) because the evidence is irrelevant; (2) because it is incompetent to prove the fact of killing; (3) because it is incompetent to prove knowledge on the part of the defendant of the fact of killing; (4) because it is incompetent to prove the dangerous condition of the bridge; and (5) because a proper predicate has not been laid for the question." The court overruled the objections, and the defendant excepted. The witness answered: "I hardly know how to answer that question. It was thought that the bridge was probably too low." (Being reminded by the court that the question was whether some other person had been previously killed or injured.) "Yes, sir; but I wont be positive that this bridge killed him. They built a new bridge there in 1879, 1880, or 1881; and my recollection is, that this man was killed before it was built. I wont be positive whether this bridge did it or the other one; but my recollection is that a bridge knocked him off, and I saw him after he was dead. Railroad hands were with him, attended to him, and took care of him."

B. C. Epperson, the superintendent of that division of the defendant's road which lies between Montgomery and Mobile, was examined as a witness for the defendant, and testified that he had been employed on railroads for nineteen or twenty years, had served as fireman, brakeman, baggage-master, yard-master, train-master, and law agent, and had been on the Mobile and Montgomery division of the defendant's road about three years; that he had frequently heard of "whipping straps," and similar devices, for the purpose of giving notice of the approach to low bridges; that none of them were now used on his division of the defendant's road, and he did not know whether or not any were now used on the other divisions of the road; that their use is not increasing on the road, but, on the contrary, fewer are now used than formerly; that all train-men, and a majority of the officials with whom he had conversed, "ridiculed the idea of putting up straps, and said they were useless;" that the ob-

jection to them was, that the men depended on the straps for warning, and were not as careful as they otherwise would have been; "that was his personal objection, and it is what the majority seemed to think." During his examination the witness was asked these questions: "Whether these straps, or ropes hung up in that way, tended to protect the employes of the railroad from accidents at low bridges and tunnels? "Whether the existence of these pendent ropes and straps, as far as his observation or experience went, tended to increase or diminish the number of accidents at bridges and low tunnels?" "Whether he regarded the L. & N. Railroad system as a prudently managed road?" "Whether other railroads which he had seen, and which did not use these appliances, were generally regarded in railroad circles as prudently managed?" The court sustained objections to each of these questions, and the defendant excepted to its rulings.

The court gave an elaborate charge in writing to the jury, *ex mero motu*, to which the defendant excepted as a whole, and also reserved twenty-one (21) special exceptions to different parts of it. The opinion of this court states the objectionable parts of this charge, and it is unnecessary to set it out in full. The court gave, also, ten charges in writing asked by the plaintiff, among which were the following: (3.) "A plea of contributory negligence confesses that the defendant was guilty of the culpable negligence charged in the counts of the complaint to which it is pleaded, except in so far as the plea traverses or denies the negligence charged in those counts, or sets up facts in qualification or avoidance of such negligence; but this kind of confession of negligence only applies to the issue made by such plea under the counts to which it is pleaded." (8.) "If the jury believe from the evidence that the plaintiff, while in the employment of the defendant as brakeman on a freight train, received personal injuries by reason of a defect in the construction of a bridge over the defendant's track, and that such defect arose from, or had not been discovered or remedied owing to the negligence of the defendant; then the plaintiff is entitled to recover for the injuries so sustained, although he may have known that such defect existed, provided he was guilty of no negligence which proximately contributed to the injury; and provided, further, that he knew the defendant, or some person superior to himself in

[Louisville & Nashville R. R. Co. v. Hall.]

the service of the defendant, knew of said defect." To each of these charges the defendant excepted.

The defendant requested numerous charges in writing, duly excepting to the refusal of each, and among them the following: (13.) "Unless the jury believe from the evidence that the injury to the plaintiff resulted from gross negligence and reckless disregard for the safety and lives of its employes in general, as distinguished from simple negligence towards the plaintiff, the judgment must be for the defendant." (23.) "It was not a duty which the railroad company owed to the plaintiff while in its employment as a brakeman on a freight train, and while walking on the top of a train, approaching or passing under said bridge, that the engineer, or other person in charge of the running of the locomotive, should blow the whistle, or ring the bell, a quarter of a mile before reaching said public road crossing, and continue to do so, at short intervals, until the train had passed said crossing; and no negligence can be imputed to the defendant from the failure of the engineer to ring the bell or blow the whistle." (38.) "There is no legal testimony to show that whip-straps, or pendent cords, were a suitable or proper device to be employed by the defendant at the bridge in question, at or prior to the time of the accident, as a warning to employes of the approach to said bridge; and negligence can not be imputed to the defendant, because of the failure to provide such devices." (44.) "No exemplary, punitive or vindictive damages can be recovered in this case, even should the jury find that plaintiff is entitled to compensation for actual damages sustained by him.

The several rulings of the court on the pleadings and evidence, the charges given, and the refusal of the charges asked, are now assigned as error.

GAYLORD B. CLARK & F. B. CLARK, JR., for appellants.

R. INGE SMITH, and GREG. L. & H. T. SMITH, contra.

STONE, C. J.—We lay down the following legal propositions: When, in crossing a public highway, it becomes necessary for a railroad company to span it with a bridge, it is its duty, if reasonably practicable, to place the structure at such an elevation as that trains, with their customary employes, can pass under it unharmed.—*Smoot v. M. & M. Railway Co.*, 67 Ala. 17; *L. & N. R. R. Co. v. Allen*, 78 Ala.

501; *Propst v. Ga. Pac. R. R.*, 83 Ala. 501; *H. & T. Railway Co. v. Oram*, 49 Tex. 341; *Wilson v. L. & N. R. R. Co.*, 85 Ala. 269. This is not an absolute, unbending requirement, but it will yield to a reasonable extent to circumstances, as many other natural and social rights must yield to other rights and interests, which duty requires to be conserved. If inequality of surface, or other hindrance, occurring naturally, or in the proper construction or grade of the railroad track, render such elevation impossible, or greatly incommode the public in the use of the bridge, or greatly or unduly increase the expense to the railroad company, then one inconvenience must yield somewhat to the other. In such case, the bridge may be so constructed as to extend below the line of absolute safety. A bridge, constructed and maintained with proper regard to these conditions, would not, without more, be negligence.—Patterson Railway Ac. Law, § 285; 2 Rorer Railroads, 1217; *Wells v. B., C. R. & N. R. R. Co.*, 2 Amer. & Eng. Railway Cas. 243; *Rains v. St. L., I. M. & S. Railway Co.*, 5 *Ib.* 610; *Clark v. Richmond & D. R. R. Co.*, 18 *Ib.* 78; *Baylor v. Del., L. & W. R. R. Co.*, 40 N. J. Law, 23; *Illick v. F. & P. M. R. R. Co.*, 35 N. W. Rep. 708. In no case, however, would it be permissible to so place the bridge, that brakemen on top of the train, in discharge of their duties, could not avoid danger by bending or stooping. A bridge, such as here last supposed, would be gross negligence, and *per se* a nuisance.—*Ill. Cen. R. R. Co. v. Welch*, 52 Ill. 183; *C. B. & Q. R. R. Co. v. Gregory*, 58 Ill. 272; *C. & I. R. R. Co. v. Russell*, 91 Ill. 298. If such bridge is so constructed as to extend below the line of absolute safety, then other duties rest on the railroad company.

The bridge in question was part and parcel of the public highway. The record affords evidence that, on the trial below, the question was considered, whether it was the duty of the defendant corporation "to blow the whistle, or ring the bell, at least one-fourth of a mile before reaching [a] public road crossing; . . . and continue to blow the whistle or ring the bell, at short intervals, until the train passed the crossing".—Code of 1886, § 1144. That statute has nothing to do with this case. Its design was to warn and protect persons who, at a public crossing, pass across and directly on the track, and who would be in danger of being struck and run over by an approaching train,—*Ala.*

*Gr. So. R. R. Co. v. Hawk,* 72 Ala. 112; *N., C. & St. L. R. R. Co. v. Hembree,* 85 Ala. 481.

Other questions were raised in the trial court, touching the duty of railroad companies to provide or furnish warning signals. Among these may be mentioned "whipping straps," and placing a cautionary light on the bridge. Considered abstractly, these are scarcely legal questions. Utility, and the usage and custom of well-regulated railroads, must determine the question of duty in this regard. If useless or hurtful, it can not be negligence to reject them. So, at most, if many well-regulated railroads abstain from their use, this absolves from all duty to resort to them. By the word *many,* we intend to be understood as meaning not a mere excess above the adjective *few.* *Many* denotes multitude; and while it is not the synonym of the word *majority,* our meaning is, that if a relatively large number, as compared with the whole number, abstain from their use, then to omit them is not, of itself, negligence. As to appliances —particularly new inventions, or changes claimed to be improvements—all railroads are not required to conform to one standard. Allowance is, and must be made, for diversity of opinion; and their use by a majority of roads does not necessarily require all railroads to adopt them.—*L. & N. R. R. Co. v. Allen,* 78 Ala. 494; *Ga. Pac. R. R. Co. v. Propst,* 83 Ala. 518; *Wilson v. L. & N. R. R. Co.,* 85 Ala. 269; *Baldwin v. C., R. I. & P. B. R. R. Co.,* 50 Iowa, 580.

When a brakeman is placed on a freight train, running on a road with which he is not familiar, and such train has to pass under a low bridge or bridges, the law, which simply voices the sentiment of humanity, requires that notice be given him of the danger he is to encounter. This notice must be reasonable; that is, he must be reasonably instructed, so as to put him on the look-out, and on inquiry and observation, that he may inform himself of the locality of the places of danger. The whole duty is not on the railroad company. The employe must give heed to the notice and instructions given him, and must employ his senses, his reasoning faculties and his attention, alike for his own safety and the welfare of the road. If he has not been sufficiently warned or notified to enable him by proper attention and diligence to learn where the points of danger are, then this would be negligence, for which the railroad company would be liable. On the other hand, if he has been sufficiently warned or notified, and from inattention, indifference,

absent-mindedness, or forgetfulness, he fails to inform himself, or fails to take the necessary steps to avoid the injury, this is negligence, and he should not recover.—*Sullivan v. Man. Co.*, 113 Mass. 396; *B. & O. R. R. Co. v. Stricker*, 51 Md. 47; *Dorsey v. P. & C. Con. Co.*, 42 Wis. 583; *L., N. A. & C. R. Co.*, 16 N. E. Rep. 145; s. c., 17 *Ib.* 584; *St. L., Ft. S. & N. R. R. Co.*, 16 Pac. Rep. 146; *Wilson v. L. & N. R. R. Co.*, 85 Ala. 269.

It is not denied, in this case, that the space between the taller freight cars used on defendant's road, and the timbers of the bridge, would not permit a man of ordinary height, standing erect on the top of the cars, to pass under the bridge without being struck by it. The two principal, leading inquiries, then, are—*First;* Was the railroad company, under the rules above declared, justified in maintaining its bridge at the elevation shown in the testimony? If it was, plaintiff was not, merely on that ground, entitled to recover, for he had no cause of action. If the railroad company, under said rules, has failed to establish its right to maintain the bridge at the elevation proved, then negligence is shown, and, unrebutted, authorized a recovery by plaintiff. That *prima facie* right would be rebutted, if plaintiff was guilty of proximate, contributory negligence. *Second:* If, under the rules we have stated, the plaintiff was sufficiently notified or warned, and from inattention, indifference, absent-mindedness, or forgetfulness, he failed to inform himself, or failed to take the necessary steps to avoid the injury, this was proximate, contributory negligence, and is also a complete answer to the action. He must avail himself of the instructions given him, or furnished for his use; and taking into the account the surroundings and perils attendant upon the nature of the service he enters upon, he must bestow such care, watchfulness and caution as ordinarily prudent men would usually exercise in reference to their own safety, under like circumstances. There are perils in the very nature of such service, against which prudence can not always guard. Of these the employe takes the risk. He is guilty of contributory negligence, if, in his care, diligence, and watchfulness, he falls below the standard stated above. 3 Wood's Railway Law, 1481: *Wabash Railway Co. v. Elliott*, 98 Ill. 481; 4 Amer. & Eng. Railway Cas. 651; *Clark v. St. P. & S. City R. R. Co.*, 2 Amer. & Eng. Railway Cases, 240; *Wells v. B., C. R. & N. R. R. Co.*, *Ib.* 243; *P. & C. R. R. Co. v. Sentmeyer*, 92 Penn. St. 276, s. c.,

5 Amer. & Eng. Railway Cas. 508; *St. L., I. M. & So. Railway Co. v. Rains,* 71 Mo. 164; s. c., 5 Amer. & Eng. Railway Cas. 610; *Clark v. Richmond & Danville R. R. Co.,* 18 Amer. & Eng. Railway Cas. 78; *Gibson v. Erie Railway Co.,* 63 N. Y. 449; *Laflin v. B. & S. W. R. R. Co.,* 106 N. Y. 136; *Devitt v. Pac. R. R. Co.,* 50 Mo. 302; s. c., 3 Amer. Railway Cas. 533; *Owen v. N. Y. Cen. R. R. Co.,* 1 Lans. 108; *A. & W. P. R. R. Co. v. Webb,* 61 Ga. Rep. 586; *Same v. Johnson,* 66 *Ib.* 259; *I., B. & W. R. R. Co. v. Flanigan,* 77 Ill. 265; *T., W. & West. R. R. Co.,* 88 Ill. 112; *Gould v. C. B. & Q. R. R. Co.* 66 Iowa, 590. And evidence that the appliance has been long used with safety, is competent on the inquiry of contributory negligence. *Allen v. B., C. R. & N. Railway Co.,* 5 Amer. & Eng. Railway Cas. 620; *A. G. S. R. R. Co. v. Arnold,* 84 Ala. 159; *Laflin v. B. & S. W. R. R. Co.,* 106 N. Y. 136; *Loftus v. Union Ferry Co.,* 84 N. Y. 455; *Burke v. Witherbee,* 98 N. Y. 562.

The complaint contains eleven counts, and there were demurrers to each of them. We think the demurrers ought to have been sustained to those numbered eight and nine. Count No. 8 is meagre and defective in many particulars. Count No. 9 fails to aver that plaintiff was in the performance of any duty pertinent to his services as brakeman, when he was injured. Count 11 is defective, in that there is no duty resting on the engineer, as matter of law, to signal the approach to a low, or dangerous overhead structure. Possibly it would be well, if the law was so framed as to require notice to be given of such approach, by a signal which exposed employes would understand. The grounds of demurrer, in reference to the counts we have declared defective, which should have been sustained, are: in reference to count 8, assignments 21 and 22; to count 9, assignment No. 23. The trial court sustained the demurrers to counts 10 and 11, and we need not consider them.

A railroad corporation is "authorized to use, or to cross, or to change public roads, when necessary, in the building, construction, or maintenance of its roadway or track, but must place the road used, or crossed, or changed, in a condition satisfactory to the authorities," &c.—Code of 1886, § 1581 (1841). It is manifest that this statute approved March 8, 1876—Sess. Acts, 257—has reference to public roads in use as such at the time the road was constructed; or, at least, in case of a bridge, that it should have been

46

erected or maintained by the railroad company. Each of the counts in the complaint is defective, in not averring that the bridge in question was erected or maintained by the railroad company. The 28th ground of demurrer ought to have been sustained. With this exception, each of the first six counts of the complaint is sufficient.—*S. & N. R. R. Co. v. Thompson*, 62 Ala. 494; *E. T., Va. & Ga. R. R. Co. v. Carloss*, 77 Ala. 443; *Hall v. Posey*, 79 Ala. 84; *M. & O. R. R. Co. v. Thomas*, 42 Ala. 672.

We will not consider the rulings on the demurrer to the third plea. The defendant could, and did have, under his second plea, the benefit of all defenses he could have made under the third.—3 Brick. Dig. 405, § 20.

Proof of general notoriety is generally admissible, as tending to prove notice of a fact, when such notice is a material inquiry; but it is never competent to prove the fact itself. That must be shown by other testimony. Applied to the present case, it was not competent testimony, on the inquiry whether the bridge in question had ever before been the means of killing a person. Seeing the dead body, was no proof that the person had been killed by the bridge, nor from the top of the train. Nor was there proof tending to show that the killing took place since the erection of the bridge which struck plaintiff. The trial court erred in receiving testimony of general notoriety.

The witness Epperson showed himself to be an expert. He should have been allowed to give his opinion, and his reason for it, as to the merits or demerits of the "whipping straps" as cautionary signals, and whether or not they were generally in use on roads regarded as well regulated. It was rightly ruled, that he could not give his opinion as to the prudent management of the Louisville & Nashville railroad, or any of its constituent sections.

The general charge given in this case, as we think the trial court intended it to be understood, is, in the main, free from error. We will first premise, however, that this case was tried, as to all the counts, on the double defense of not guilty, and proximate contributory negligence on the part of plaintiff. The effect of this double defense was, and is, that defendant denied all negligence on its part, and threw the burden of proof on plaintiff. As a further defense the defendant set up, that if found to have been guilty of negligence, then plaintiff was himself guilty of negligence, which contributed proximately to the injury he suffered. The burden was on the

defendant to make good this phase of its defense.　Both lines of defense being interposed to the whole action, the defense of contributory negligence was not in whole, nor to any extent, an admission that the defendant had been guilty of negligence.

Some expressions in the general charge are subject to criticism.　We will quote certain passages, which possibly may have misled the jury, and, with them, will suggest such verbal alterations as will free them from all grounds of objection.　The alterations are placed in brackets.　They will be found to be, sometimes, merely explanatory, additional words, or phrases, while at other times, the words or phrases will be seen to be substituted for those found in the transcript. I begin with the first sentence in the first paragraph: "Which injuries [it is claimed] resulted from the negligence of the defendant, and [that] he would not have suffered [them] but for such negligence. . . The defendant, on the contrary, [seeks to excuse itself for the low bridge, and alleges] first [that] it was necessary to build the bridge at the height at which it was built. . . It being the law of this State, that a person entering the employment of a railroad [has a right to expect the railroad will furnish] safe appliances, &c. . . In order to recover exemplary damages, it is not necessary that the defendant should have intended to commit the wrong, [if there was gross, reckless, or wanton negligence]—so gross as to evince an entire want of care," &c.

Charges to juries should, if possible, be plain, simple, and easily understood.　They should be free from obscurity, involvement, ambiguity, metaphysical intricacy, and tendency to mislead.　A charge obnoxious to any of these objections, should always be refused, even though, on dissection, it may assert a correct legal proposition.　The office and purpose of charges are to enlighten the jury, and to aid them in arriving at a correct verdict, as plain, common-sense men.　In other words, they should be made up of plain propositions of law, applicable to the tendency, or varying tendencies of the evidence, and they should go no farther.　Charges thus given greatly aid juries in their deliberations.

We do not know that we comprehend the meaning and import of charges 3 and 8 of the series styled "plaintiff's charges."　Charge No. 3 asserts, that when contributory negligence is pleaded, this is a confession "that the defendant was guilty of the culpable negligence which is charged in the counts of the complaint to which it is pleaded, except

so far as the plea traverses or denies the negligence of defendant charged in those counts, or sets up facts in qualification or avoidance of such negligence." This is an assertion, that the plea of contributory negligence admits the negligence charged, unless the plea itself—not another plea—negatives, or avoids such negligence. We have shown above that this is not the true rule. A denial of the negligence charged, or plea of not guilty, although pleaded separately, repels all presumption of confession, which arises from the plea of contributory negligence when pleaded alone. And the last sentence of the charge does not heal the error, for each of the pleas, not guilty and contributory negligence, was pleaded to the entire complaint. Freedom from negligence is not one of the essentials of the defense of contributory negligence. There must be negligence in the defendant, before the plaintiff can contribute to its injurious results.—*M. & C. R. R. Co. v. Copeland*, 61 Ala. 376. Charge 3 is not only erroneous as a legal proposition, but the pleading furnishes no field for its operation.

Charge 8 hypothesizes, that there was a defect in the construction of the bridge, and that such "defect arose from, or had not been discovered or remedied, owing to the negligence of defendant;" and asserts that the plaintiff is entitled to recover for the injuries received, "although he may have known that such defect existed, provided he was guilty of no negligence which proximately contributed to the injury; and provided, further, that he knew that the defendant, or some person superior to himself in the service of the defendant, knew of said defect."

How the last proviso in this charge can become material on the inquiry of plaintiff's contributory negligence, is not perceived. It is undisputed that, by stooping, plaintiff could have passed the bridge in safety. The two phrases, "although he may have known that such defect existed," and "provided that plaintiff was guilty of no negligence which contributed to the injury," are incompatible with each other, when viewed in the light of the uncontroverted testimony. Having knowledge of the low bridge, and failing to stoop in passing it, would be proximate contributory negligence, even though every employe of the railroad had knowledge of the defect. Charges 3 and 8 should not have been given.

Charge 13, asked by defendant, was rightly refused. *L. & N. R. R. Co. v. Coulton*, 86 Ala. 129; s. c., 5 So. Rep. 448. Charges 23 and 38 of defendant's series ought to have

[Williams v. Evans.]

been given, and charge 44, in the state of the testimony, should not have been refused. There is no testimony tending to prove gross, wanton, or reckless negligence.—*S. & N. R. R. Co. v. Huffman*, 76 Ala. 492; *Ala. G. S. R. R. Co. v. Arnold*, 80 Ala. 600; s. c., 84 Ala. 159.

Under the rules of law declared above, and in the state of the proof found in the record, each of the main questions of fact—negligence of defendant, and contributory negligence by plaintiff—was one of fact for decision by the jury.

Reversed and remanded.