# Louisville & Nashville Railroad Co. v. Hall.

*Action by Brakeman against Railroad Company, for Damages on account of Personal Injuries.*

1. *Averments of negligence* in complaint, as to the failure to use and maintain proper precautionary signals on approach to bridges low overhead, for protection of brakemen on freight trains, held sufficient on demurrer.

2. *Railroad bridges over or across public road; statutory regulations as to blowing whistle or ringing bell.*—The statutory provision which requires the conductor or engineer of a moving locomotive or train of cars to blow the whistle or ring the bell on approaching a public road crossing (Code, § 1144), is intended for the protection of persons who are approaching or crossing the track of the road, and has no appli-

[Louisville & Nashville Railroad Co. v. Hall.]

cation to the case of a brakeman, who sues for damages on account of personal injuries sustained by being struck by a low overhead bridge while on the top of a car in the discharge of his duties.

3. *Demurrer to part of count.*—In case to recover damages for personal injuries caused by alleged negligence, a count is not demurrable because the averment of one of the cumulative acts of negligence is defective: the remedy is by a request for instructions to the jury, or, possibly, by motion to strike out the defective part of the count.

4. *Interrogatories to party.*—When interrogaties are propounded to a party under the statute (Code, §§ 2816–22), he is "bound to answer all pertinent interrogatories, unless by the answer he subjects himself to a criminal prosecution;" and this is the only exception allowed by the statute.

5. *Objection to question and answer.*—When the deposition of a witness is taken on interrogatories and cross-interrogatories, and no objection is filed to an interrogatory which calls for irrelevant matter, an objection to the answer, if responsive, comes too late on the trial.

6. *Prior injuries; general notoriety as notice.*—In an action to recover damages for personal injuries sustained by plaintiff, a brakeman, while in the discharge of his duties on the top of a car being struck by a low br'dge overhead, the notoriety of the fact that other persons had previously received injuries from the same bridge is admissible evidence as tending to show notice to the railroad company of the dangerous condition of the bridge, and negligence in failing to elevate it.

7. *Railroad bridges across public road.*—In the construction and maintenance of a bridge across a public road, it is the duty of a railroad company to erect and keep the structure at such an elevation that trains can pass under it with safety to brakemen, and other employes while in the discharge of their ordinary duties; and although it may be placed below the line of absolute safety, when inequality of surface, or other natural hindrance, would render a greater elevation impracticable, or greatly incommode the public in the use of the bridge, or unduly increase the expense to the railroad company, yet an additional expense of a few hundred dollars is too insignificant to be weighed in the balance against the peril to human life.

8. *Appliances and warning signals for the protection of employes.*—In the use of appliances or instrumentalities such as "whipping-straps," or ropes pendent from above, as cautionary signals to brakemen when the train is approaching a low bridge or a tunnel, the duty and liability of a railroad company are determined by utility and the usage and custom of well regulated roads; and their use by many, or even a majority of roads, does not, *per se*, impute negligence on account of the failure to use them, since allowance must be made for a difference of judgment as to such matters.

9. *Cross-examination of witness.*—While very liberal rules prevail as to the legitimate scope of cross-examination, boundaries must be assigned to it, and it should never be allowed to lead to an unnecessary multiplication of issues, whose only effect will be to draw away the minds of the jury from the main question involved; as where the failure of the defendant railroad company to use certain warning signals is charged to be negligence, and the defendant has examined the officers of many other roads as to the use and usefulness of such precautionary signals, the plaintiff can not, on cross-examination, inquire into the particulars of similar accidents on those roads—whether they had not been mulcted in damages, and afterwards adopted such signals.

10. *Photograph of bridge,* the scene of the accident, held "admissible for what it was worth," though its correctness was not verified

8

by the photographer or any other witness, the court being "not agreed on the question of its admissibility."

11. *Charge in writing on request; oral additions, or explanations.* When the general charge of the court is given in writing on request (Code, § 2755), and, exceptions being then reserved to specified portions of it, an explanation or addition is made orally, and duly excepted to on that account, this would probably be ground of reversal; but not when the ground of objection is not stated to the court at the time, so that it might be corrected.

12. *Contributory negligence; knowledge, or notice.*—If plaintiff, a brakeman, was reasonably *notified* of the low bridge overhead by which he was injured, "this put him on the look-out, and on inquiry and observation;" and if thereby he might have ascertained the location of the bridge, but failed to use due diligence to do so, his want of knowledge was his own fault, and his ignorance was contributory negligence. In such case, *knowledge* and *notice* are not synonymous.

13. *Punitive damages;* as to the right to recover in this case, nothing is decided, the court being equally divided as to the sufficiency of the evidence to authorize the submission of the question to the jury.

14. *Bulletin boards and printed placards as notice.*—Bulletin boards and placards, printed or posted, are proper methods of giving notice to railroad employes, but not the only methods; and where a party has been expressly notified, he can not complain that no placard or bulletin board was posted.

APPEAL from the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

This action was brought by *Wallace* (not William) G. Hall, a minor, suing by his next friend, against the Louisville & Nashville Railroad Company, to recover damages for personal injuries sustained by plaintiff while in defendant's employment as a brakeman; and was commenced on the 28th February, 1888. The accident occurred on the night of October 26th, 1887, when plaintiff, being on the top of one of the defendant's freight cars in the discharge of his duties as brakeman, was struck by the timbers of a bridge overhead, which spanned a public road near Greenville in Butler county, and was so badly injured that it became necessary to amputate one of his feet. On the first trial, issue being joined on the pleas of not guilty and contributory negligence, the plaintiff recovered a verdict for $25,000, which was reduced to $20,000, by agreement, on motion for a new trial; and on the second trial, as shown by the present record, he had a verdict and judgment for $18,000.

The original complaint contained eleven counts, but a demurrer was sustained to the 10th and 11th counts; and on the first appeal to this court, it was held that the 8th and 9th counts were demurrable, for reasons assigned, and specified objections were pointed out to the first six counts. After the reversal and remandment on the former appeal, the plaintiff amended his complaint, by leave of the court, (1) by striking out the

7th, 8th, 10th and 11th counts; (2) by amending the first six counts in the particulars pointed out in the opinion of this court, and also the 9th count; (3) by striking out of the last paragraph the italicized words of the following averment: "As a part of each of the foregoing counts, the plaintiff avers that the injuries complained of arose from the defendant's *gross* negligence *and reckless disregard of the safety and lives of defendant's employes ;*" (4) by adding four new counts, numbered 12, 13, 14 and 15. The defendant demurred to the whole complaint, and to each separate count as amended, assigning 50 separate grounds of demurrer. The court sustained the demurrers to the 14th and 15th counts, and overruled all the others; and the cause seems to have been tried, as before, on issues joined on the pleas of not guilty and contributory negligence.

On the trial, numerous exceptions were reserved by the defendant to rulings of the court on questions of evidence; and each of these rulings, 29 in number, is here assigned as error. The opinion of the court states the material facts bearing on the points decided, and the others require no special notice.

The defendant having requested that the general charge of the court to the jury should be given in writing (Code, § 2755), it was so given, and contained the following, with other, statements of the legal principles involved: "Should the jury find from the evidence that the bridge was so low as to be dangerous to brakemen standing on the top of freight cars, but that, from the nature of the case, it could not be built higher without unreasonable inconvenience to the public, or unreasonable expense to the company, and that therefore it was not negligence on the part of the defendant to build the bridge at the height at which it was built; yet it would be the duty of the defendant to give, or cause to be given to its employès, due notice of the danger, [*No. 1*] *and to make use of such means as prudent persons engaged in the same or like business would employ; and if the defendant did not give such notice to plaintiff, or cause the same to be done, this would be negligence on the part of the defendant,* and plaintiff would be entitled to recover, if he suffered injury as the proximate result of such negligence, and was without fault on his part. . . If the jury should believe from the evidence that the bridge was so low as to be dangerous to brakemen standing on the top of freight cars, but that, on account of the surroundings, it could not be built higher without unreasonable inconvenience to the public, or unreasonable expense to the railroad, and the defendant gave plaintiff due notice of the danger, [*No. 2*] *the plaintiff can not recover, unless you further find that prudent*

[Louisville & Nashville Railroad Co. v. Hall.]

*persons, engaged in the same or a like business, under the same or like circumstances, would have made use of whipping-straps, or other devices, to notify brakemen of danger ; in which event they should find for the plaintiff,* if they further find that the absence of whipping-straps, or other devices, proximately caused the injury, without fault on the part of the plaintiff."

To portions of this charge the defendant reserved exceptions, as follows : " The defendant excepted specially to the following portion of said charge," namely, the italicized words marked *No. 1.* " Thereupon the court stated to the jury, orally, that they should consider said portion of said charge as if the word *ordinarily* was written before the word *employ.* Thereupon, defendant excepted to said portion of said charge given with said qualification, as above stated. The defendant also excepted to the following portion of said charge," namely, the italicized words marked *No. 2.* "The court then stated to the jury, orally, that they should consider said portion of said charge excepted to as if the word *ordinarily* were written in after the words *business would ;* and the defendant excepted to that portion of said charge given with said qualification and instructions as above stated."

Other exceptions were reserved by the defendant to the general charge of the court, to thirteen charges given at the instance of the plaintiff, and to the refusal of numerous charges (48) asked in writing by defendant. Of the charges asked and refused, the 24th was in these words : " (24th.) If the jury believe from the evidence that plaintiff was expressly notified by the conductor or train-men, previous to the injury, that there were low bridges on the line of railroad, and that there was a low bridge at Greenville, then plaintiff can not complain that his attention was never called to any bulletin or notice, writen or printed, setting forth the fact that there were such low bridges on the line, the purpose of such bulletin or printed notices being carried out by such verbal notice."

The assignments of error embrace all the rulings of the court adverse to the defendant, on the pleadings and evidence, charges given, and the refusal of charges asked.

GAYLORD B. CLARK, and F. B. CLARK, for appellant.

GREG, L. & H. T. SMITH, and R. INGE SMITH, *contra.*

(The printed arguments of counsel, covering all the assignments of error, can not be condensed within proper limits for insertion.)

[Louisville & Nashville Railroad Co. v. Hall.]

STONE, C. J.—When this case was before us at a former term—87 Ala. 708—we ruled on demurrers to the several counts of the complaint, and pointed out defects in each of them. The imperfections in several of them were slight. When the case returned to the City Court, the first, sixth, and ninth counts were so amended as to conform to our views. Demurrers were interposed to the amended counts, re-assigning many of the grounds assigned to the originals, and adding new ones. These demurrers were overruled, and we think rightly. Each of these counts, as amended, presents a *prima facie* cause of action within the rules of pleading which prevail in this State. Very great technicality is not required with us. Certainly to a common intent is enough.

The plaintiff, under leave of the court, added four new counts to his complaint. These were severally demurred to, and the court held the twelfth and thirteenth counts to be sufficient. For the reasons stated above, we hold each of these counts good.

Appellant's criticism of count 13 does not take in its whole scope. It contains this averment: "But defendant, after it obtained the management and control of said railroad, negligently failed to maintain such whipping-straps, or gallows and ropes, or other devices, although they were an effective and proper means of giving warning to defendant's freight brakemen, and other employés upon its freight trains, of their approach to said bridge, and negligently allowed the same to rot down, or be removed, and negligently failed to provide any other sufficient means of informing said brakemen of their approach to said bridge, although it knew said bridge was of a height to be dangerous to such freight brakemen, unless provided with whipping-straps, gallows and ropes, or some other similar and effective device; or would have known thereof by the exercise of reasonable diligence." This is an averment that whipping-straps, if maintained, would have been an effective and proper means of giving warning of the approaching peril, and that neither that, nor any other means, was employed for that purpose. This, as an averment, is sufficient.

To counts 12 and 13, the defendant pleaded, among other defenses, that the injury therein complained of did not occur within twelve months before the filing of said additional counts. This plea was demurred to, the ground alleged being, that neither of them presented any new cause of action. This demurrer ought to have been sustained, but the record fails to show any ruling on it.

The fifth count of the complaint alleges, as a breach of duty

by the defendant, the failure of the engineer to blow the whistle, or ring the bell on the train, as by section 1144 of the Code he was required to do, "before reaching any public road crossing." This was assigned as a special ground of demurrer; and inasmuch as the City Court overruled the demurrer to this count, it must have held this ground of demurrer insufficient. On the former hearing of this case—87 Ala. 708, 718—we ruled, that this case does not fall within the provisions of that statutory requirement. We said, "its [the statute's] design was to warn and protect persons who, at a public crossing, pass across and directly on the track, and who would be in danger of being struck and run over by an approaching train." It is contended before us that the City Court erred in not sustaining the demurrer to this part of the fifth count.

It is a general rule, that a demurrer to a part of a count will not be entertained, unless the imperfect part is so material as that, being eliminated, it leaves the count without a valid cause of action. A seeming exception is recognized when the suit is on a penal bond, with more than one assignment of breach. In such action, each breach is treated as a separate charge, or count, and may be demurred to separately.—*Hayes v. Anderson*, 57 Ala. 374; *Copeland v. Cunningham*, 63 Ala. 394; *Flournoy v. Lyon*, 70 Ala. 308. The present suit does not fall within that class. The clause objected to is only one of several alleged, cummulative acts of negligence, and if it be stricken out, the count will remain amply good. Security against the possible injurious effects a defendant may suffer from such irrelevant averment, must be sought in a proper instruction to the jury. Demurrer can not reach it. Possibly, it should be stricken out as immaterial and impertinent, if moved for.—*C. & W. Railway Co. v. Bridges*, 86 Ala. 448. We find no error in the rulings on the pleadings.

The plaintiff propounded to defendant interrogatories for discovery, as provided by our statute.—Code of 1886, §§ 2816, *et seq.* Defendant objected to these interrogatories, and moved to suppress them, and also the answers to them. The court sustained this motion in part, and overruled it in part. The ruling of the court in permitting any of the testimony so obtained to go to the jury is assigned as error.

It is certainly the rule, our system of jurisprudence, that no one can be required to criminate himself. The general expression is, that while in civil proceedings any fact material to the maintenance or defense of the suit may be elicited from the adversary by discovery, yet no one can be required to discover any fact which will expose him to a criminal prosecution, or to a penal recovery.—2 Daniell's Ch. Pr. 1557 ;

[Louisville & Nashville Railroad Co. v. Hall.]

2 Story's Eq. Jur. § 524, *et seq.*; *Ib.* 575; 1 Pom. Eq. §§ 191, 194, 201; 2 Amer. & Eng. Encyc. of Law, 201 *et seq.* In one case, *Glynn v. Houston,* 1 Keen, 320, 337, Lord Langdale said, "a bill of discovery can not be sustained in aid of an action for a mere personal *tort.*" Other authorities, however, extend this doctrine further than Lord Langdale's language would seem to justify. We base our judgment on the language of our statute (Code, § 2822), which declares that, under its provisions, "the party is bound to answer all pertinent interrogatories, unless by the answer he subjects himself to a criminal prosecution." There is nothing in this assignment of error.

One of the severely contested inquiries in the court below was, whether the bridge, by striking against which the plaintiff was injured, could have been raised higher above the track, without too great inconvenience to vehicles crossing it, without great and serious injury to neighboring land-proprietors affected by the change, or without too great expense to the railroad corporation. Many witnesses residing in or near Greenville—(the bridge was at Greenville)—were examined by deposition on this controverted question, and gave testimony *pro* and *con.* The testimony was taken on written interrogatories served and crossed. In propounding interrogatories, plaintiff inquired if there were not streets in Greenville, and public roads near by, leading to Greenville, which had steeper grades than the approach to the bridge would be, if the bridge was raised two feet higher. (If raised two feet, the bridge would probably be above the ordinary danger-line). No objection was filed to the interrogatories calling for this information, but defendant crossed the interrogatories thus propounded. On the trial below, defendant moved to suppress the answers in reference to other streets and neighboring roads. The answers were strictly responsive to the interrogatories. The court overruled the motion, and admitted the testimony. This was excepted to, and is assigned as error. We need not decide whether this testimony was legal, if objected to at the proper time, although we know no rule that would justify its introduction. The objection came too late, and was rightly overruled.—*Townsend v. Jeffries,* 24 Ala. 329; *Wilkinson v. Mosely,* 30 Ala. 562; *Walker v. Walker,* 34 Ala. 469.

Plaintiff received his injury by a collision with the low bridge immediately south of the depot at Greenville. He was brakeman on a freight train, and his post of duty, when the train was in motion, was on the top of the cars. When struck, he was walking back on the top of the cars, to his proper place on the train. He was making his eighth trip over the road, having passed safely seven times under this bridge, but always

in the night time.    It was night when he was injured, and he
had his back to the bridge.    Several witnesses testified that
they had informed and cautioned him in regard to the low
bridges, including this one at Greenville; and he admitted in
his own testimony that he had been notified of the low
bridges, but could not say whether he was notified of the one
at Greenville.    The company had posted notices of the low
bridges, shown on its bulletin boards, and in placards hung,
under regulations, in the cabooses of the freight trains.    Many
exceptions were reserved to the court's rulings, excluding
testimony of the contents of the placards, and of the duty of
the train officers to keep them posted in the cabooses.    There
is nothing of merit in these exceptions; and if there were, a
copy of the placard was put in evidence, and thus supplied the
desired proof in an unexceptionable shape.    The proper in-
quiry was, not what duty required of the officers of the train,
but to what extent they performed that duty.    It is neither a
defense, nor a condonation of an act of negligence, that duty
—commanded duty—required of the actor that he should be
diligent.    Nor was it material to inquire the meaning of the
words "Fort Deposit and Greenville," found in the placard.
The low bridge between those points, and notice of it, were
immaterial inquiries in the present suit.

The witness, Porterfield, testified to general notoriety in
Greenville, of prior injuries suffered by brakemen in conse-
quence of the low bridge there.    This was objected to, but the
decision of the question was withheld.    It is not shown that it
was subsequently called to the attention of the court.    Later
in the trial, positive testimony of those prior injuries was
given.    This legalized Porterfield's testimony, not as evidence
that those injuries had been inflicted, but as testimony to be
weighed by the jury in determining whether the railroad com-
pany, through its officials, had notice of the injury previously
done.    This testimony, in both of its aspects, was material
upon a single inquiry—namely, whether the defendant was
guilty of negligence in maintaining the bridge at its then ele-
vation.    But, in this inquiry, it must not be forgotten, that if
the irregularity of the ground's surface, and the state of the
neighboring improvements, were such that the bridge could
not be raised without too great inconvenience to vehicles cross-
ing it, without great and serious injury to neighboring land
proprietors affected by its change, or without too great ex-
pense to the railroad corporation, either of these would furnish
an excuse for not raising the bridge.    Either of said categories
would present a case where one convenience must yield some-
what to the conservation of another.    This inquiry should be

fairly presented to the jury, and carefully considered by them. *L. & N. R. R. Co. v. Hall*, 87 Ala. 708. ·

Very liberal rules should prevail as to the legitimate scope of cross-examination. Still boundaries must be assigned to it. It should never be so indulged as to lead to a multiplication of issues having no direct bearing on the question at issue, and whose only effect will be to draw the minds of the jury from the main questions involved. We have said, many times, that railroads are not required to adopt every appliance which some roads, even a majority of the well regulated, have incorporated into their system of management. Something must be accorded to diversity of judgment. If many well regulated railroads abstain from adopting a particular appliance which other roads, even a majority, consider wise precautions and adopt, such abstention can not be pronounced, *per se*, recklessness, or negligence.—*Allen's Case*, 78 Ala. 494; *Propst's Case*, 83 Ala. 518; *Wilson's Case*, 85 Ala. 269; *L. & N. R. R. Co. v. Hall*, 87 Ala. 708, 719.

What we have said above has reference to "whipping-straps" as useful warning signals, so elaborately presented in the record before us. The influence that device should exert as a factor in the decision of this case, is not alone whether it is serviceable in giving notice of danger ahead. The testimony on this question is very widely variant. The inquiry is broader than this. Is it so manifestly serviceable as to command the *consensus* of intelligent railroad men so generally as that it can not be reasonably ignored or disregarded? Or, is its utility disbelieved and disallowed in the management of many well governed and well regulated railroads? If this question be reasonably debatable, and skilled railroad men honestly differ in judgment as to the utility of this, or any other cautionary appliance, and differ to such extent as that many well regulated railroads abstain from their use, then such abstention is not legal negligence.

We recur to the question of the scope of legitimate cross-examination. Defendant examined by deposition many railroad officials scattered over many States of the Union, as to the use and usefulness of "whipping-straps" as cautionary signals. On cross-examination, plaintiff inquired as to the rule and habit in reference to such warnings practiced by some fifty or more railroads scattered over many of the States, and in Canada. In reference to some of these roads, the inquiry went further, and called for the disclosure of certain injuries inflicted by over-head, low bridges—whether the railroad had been mulcted in consequence of such injuries, and whether they had not subsequently adopted "whipping-straps" as

[Louisville & Nashville Railroad Co. v. Hall.]

warning signals. These cross-interrogatories were objected to, and a motion made to suppress the testimony they elicited. All such testimony ought to have been excluded. Its tendency was to multiply the issues almost indefinitely, and to greatly embarrass, if not to mislead the jury, in their deliberations. In overruling the motion to suppress this part of the testimony, the City Court erred.

We hold, also, that the City Court erred in allowing the letters of Metcalf, of the attorneys, and of the answers to such letters, to be put in evidence. There was nothing in them which should legitimately weaken the force of the witnesses testifying, and they could not be competent for any other purpose. If they had any influence, it was to prejudice the jury in their deliberations, while the correspondence, properly interpreted and understood, should not, in any respect, influence the verdict of the jury.

A photograph, "Exhibit P," was received in evidence, against the objection and exception of defendant. That photograph was material evidence only on the postulate, that it furnished some aid in determining the grade of Milner Street, at the point of its eastern approach to the bridge. The photographer was not examined as a witness, and there is no positive proof of the position he occupied when the picture was taken. Lane, and other witnesses familiar with the locality, state it is not a correct representation of the place, and some of them say they would not have recognized it from the picture. No witness testified that it was a correct representation. Is it not true that the correctness of such a picture, as an aid in determining the grade of the street, must depend largely on the position and elevation of the camera, at the time it was taken? Can such a picture give a correct impression of grade, if taken longitudinally with the street, or at an acute angle? To be at all reliable on the inquiry of the grade, should not the camera be placed at a right angle with the street? But the court is not agreed on the question of its admissibility, and we therefore hold that it was admissible for what it was worth.

The general charge to the jury was given in writing at the request of the defendant. The first and second exceptions interposed to it by defendant were to certain segregated portions thereof, which the reporter will embody in the statement of facts, as Nos. 1 and 2. The court thereupon stated orally, that he inserted the word "ordinarily" in certain designated places in each portion of the charge excepted to. The alteration was not written. The defendant excepted in the following language: "And the defendant excepted to that portion of said charge given with said qualification and instructions as

[Louisville & Nashville Railroad Co. v. Hall.]

above stated." It is contended before us that the City Court erred in not correcting the writing, instead of making the correction orally. If this objection had been rested on the ground, that the correction was not in writing, it is probable we would hold it well taken. It was due, however, to the trial court, that the true ground of objection should be stated. If that had been done, there is little, if any doubt, that the manuscript would have been then and there corrected. We decline to make this a ground of reversal.—3 Brick. Dig. 80, §§ 33, 35.

The first charge given at the instance of plaintiff is faulty, in that it employs the word "knowledge" in several places, where *notice* meets all the requirements of the law. If, before the collision, plaintiff was reasonably notified of the low bridge at Greenville, this "put him on the look-out, and on inquiry and observation;" and if he failed in this duty, when its observance would have enabled him to know where the bridge was located, such want of knowledge was his own fault, and would constitute his ignorance contributory negligence.—*L. & N. R. R. Co. v. Hall*, 87 Ala. 719–20; *Mills v. Sibert*, 81 Ala. 140.

Whether or not there was any testimony which authorized the submission to the jury of the inquiry of exemplary, punitive or vindictive damages, was and is, as we have stated above, one of the severely contested questions in this case. That question depends on another, namely : Was it practicable to raise the bridge above the danger-line, without too great inconvenience and injury to the public, or to adjacent property holders affected thereby, and also without too great expense to the railroad corporation? Under the testimony, the first of these inquiries is the one of chief importance; for, under all the testimony, the expense of erecting a new and higher bridge was too insignificant to be weighed in the balance against the peril to human life. Many witnesses gave testimony for and against the practicability of elevating the bridge, having reference to the street as a highway, and to the two public warehouses which lined the approach to the bridge. We feel safe to say that, on the question of practicability, the testimony was in marked and palpable conflict.

If, under the rules of practicability stated above, the bridge could have been so raised as to allow a brakeman on the top of the cars in use to pass under it with absolute safety, then, to fail to do so was negligence, and subjected the railroad company to the actual damages caused by the failure, unless there was proximate, contributory negligence. Under what conditions will the negligence become so increased and aggravated

.as to justify the imposition of greater damages by way of pun-ishment, than compensation for the actual injury sustained ? On this question the court stands equally divided; two of the judges holding there is no testimony authorizing the jury to find that degree of negligence which justifies punitive damages; while the other two maintain there was enough testimony on that question to be considered by the jury. The question raised by the charges, whether there could be a recovery of vindictive damages in this case, is not decided.— *Wilkinson v. Searcy*, 76 Ala. 176.

Bulletin boards and placards are sometimes resorted to, as methods of giving notice. They are not the only methods. If, before the injury, plaintiff was expressly notified of the low bridge in question, this answered all the purpose a bulletin board or placard could accomplish. Charge 24 asked by de-fendant should have been given.

This opinion must be interpreted in connection with our former ruling.—87 Ala. 708–25.

Reversed and remanded.