# CASES

## IN THE

# SUPREME COURT OF ALABAMA.

### NOVEMBER TERM, 1890.

## Tenn. Coal, Iron & R. R. Co. *v.* Kyle.

*Action for Damages on account of Personal Injuries, by Brakeman against Railroad Company.*

1. *Running switch-engine without pilot, or cow-catcher, as negligence.*—Although switch-engines are operated without pilots, or cow-catchers, in the yards of all well regulated railroads, and the practice is justified by satisfactory reasons; this does not excuse or palliate the use of such engine without a pilot in drawing a freight train of loaded cars outside of the yard, or from one yard to another distant nearly three-fourths of a mile; nor does it relieve the railroad company from the imputation of negligence, at the suit of a brakeman, who was injured by the derailment of the cars caused by running over a cow on the track.

2. *Relevancy of evidence as to "another case."*—Plaintiff's injuries having been received while in defendant's employment as a brakeman, on a freight train of loaded cars, which was drawn by an engine without a cow-catcher attached, and which was derailed by running over a cow on the track; a railroad engineer, who has testified that "an engine was liable to be thrown off with or without a cow-catcher, and that he knew of one case," can not be allowed to testify, against objection, as to the particulars of that case.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by Willis Kyle against the appellant corporation, to recover damages for personal injuries sustained by plaintiff while employed as a brakeman in the defendant's service; and was commenced on the 2d May, 1889. The injuries were received on the 5th March, 1889; were caused by the derailment of a freight train of cars on the defendant's track between Pratt Mines and Slope No. 4, which was drawn by a switch-engine without a cow-catcher attached, and which was thrown from the track by running over a cow; and they necessitated the amputation of one of the plaintiff's legs. The defendant pleaded the general issue, and the cause was tried on that plea alone. The defendant excepted to the

refusal of the court to give the general charge in the defendant's favor on request, and to the exclusion of the testimony of one Elmore as a witness, which is thus stated in the bill of exceptions: "On the examination of the witness Elmore, the defendant asked him, whether or not the pilot on the engine always prevented its derailment in the event it struck a cow, or other obstruction on the track. The witness had previously testified, that he had been an engineer on railroads for several years; that the manner of running them was familiar to him, and that an engine was liable to be thrown off with or without a cow-catcher. The witness then proceeded to say that he 'knew of one case,' when plaintiff's counsel objected, and the defendant's counsel then asked the witness to 'state about that case;' to which question plaintiff objected, and the court sustained the objection; to which defendant excepted. The exclusion of this proposed evidence, and the refusal of the general charge asked by the defendant, are assigned as error.

HEWITT, WALKER & PORTER, for appellant.

TALIAFERRO & VAUGHAN, *contra.*

STONE, C. J.—The plaintiff, appellee in this case, was the servant—brakeman—in the employment of the appellant corporation. He was at his post of duty, and on one of the trains of the railroad company, when the train on which he was serving was derailed, and one of his legs was thereby so much injured and mangled, as that he was forced to submit to amputation of the limb. The engine drawing the train—a freight train with loaded cars—was without a pilot, or cowcatcher, and the immediate cause of the derailment was, that the train ran over a cow, and was thrown from the track. No other defect in the machinery, and none in the track, was shown. The contention of plaintiff was, and is, that the running of the train without a cow-catcher attached to the engine was negligence in the railroad company, which caused the injury, and entitles him to recover under the statute.—Code of 1886, § 2590.

So much of that statute as pertains to this case reads as follows: "When a personal injury is received by a servant or employé in the service or business of the master or employer, the master or employer is liable to answer in damages to such servant or employé, as if he were a stranger and not engaged in such service or employment, in the cases following: 1. When the injury is caused by reason of any defect in the condition of the ways, works, machinery, or plant connected with,

[Tenn. Coal, Iron & R. R. Co. v. Kyle.]

or used in the business of the master or employer. . . . But the master or employer is not liable under this section, if the servant or employè knew of the defect or negligence causing the injury, and failed in a reasonable time to give information thereof to the master or employer, or to some person superior to himself engaged in the service or employment of the master or employer, unless he was aware that the master or employer, or such superior, already knew of such defect or negligence; nor is the master or employer liable under subdivision one, unless the defect therein mentioned arose from, or had not been discovered or remedied owing to the negligence of the master or employer, or of some person in the service of the master or employer, and intrusted by him with the duty of seeing that the ways, works, machinery, or plant were in proper condition."

It was testified on the trial that those in control of the train knew the engine was being run without a cow-catcher, and it would overtax credulity to suppose that either the conductor or engineer operating the train was ignorant of that fact. It was shown that switch-engines, on all well regulated railroads, are operated without pilots or cow-catchers, and satisfactory reasons are given why they are so run. The operations of switch-engines are confined to stock-yards, and to the switching area of the track. As a rule, they are much more easily brought under the control of the engineer than road-engines are, first, because they move at a much lower rate of speed, and, secondly, because they usually draw fewer and less burdened cars, and, hence, their momentum is much more easily overcome. This, however, can furnish no excuse or palliation in this case. At the time the plaintiff was injured, the engine was not engaged in switching, nor was it within the area allotted to such operations. It was drawing a freight train of loaded cars, and could not be easily or speedily brought to a stand-still. All the testimony agrees that the cow-catcher is useful in throwing obstructions from the track—that they are in general use alike on passenger and freight trains, and that, when used, derailments by obstructions on the track are less likely to occur. And there is no testimony that they are a new invention, or one the utility of which is in dispute or doubt in the minds of railroad men. It is common knowledge that they have long been in general, if not universal use on railroads.

The City Court did not err in refusing to let the witness Elmore testify about another case. Nor was there error in refusing to give the general charge.—*L. & N. R. R. Co. v. Hall*, 91 Ala. 112.

Affirmed.