[Louisville & Nashville Railroad Co. v. Banks, Admr.]

# Louisville & Nashville Railroad Co. v. Banks, Admr.

*Action against Railroad Company for Damages, by Administrator of Person killed.*

1. *Negligence in construction of railroad bridge.*—The fact that a railroad company maintains a bridge over its track so low as not to permit a brakeman standing on top of a freight train to pass under it in absolute safety constitutes, under ordinary circumstances, negligence, which would *prima facie* authorize a recovery against such railroad company by a brakeman knocked from one of its freight cars while on top of said car in the discharge of his duties, unless overcome by proof that the brakeman so injured was guilty of negligence which proximately contributed to the injury.

2. *Same; when not willful, wanton and intentional negligence.*—The fact that a railroad company negligently maintains for many years a bridge over its tracks, so low as to require a brakeman standing on top of a freight train to stoop in order to pass under it in safety, does not constitute willful, wanton or intentional negligence, although the bridge could have been elevated at small expense and without public inconvenience.

3. *Same; duty of railroad company to instruct its brakemen.*—When a person employed as a brakeman on a railroad with which he is not familiar, is placed on a freight train which is to pass under bridges so low as to require brakemen on top of the cars to stoop in order to pass under safely, it is the duty of the railroad company to notify and warn him of such bridges, and so instruct him as that he may inform himself of their locality, and may know when and how to avoid the danger incident to passing under them.

4. *Same; contributory negligence of brakeman if he fails to abide instructions.*—When a brakeman is placed on a freight train on a road with which he is not familiar and such train is to pass under bridges so low as to require him to stoop, if on top of the train, in order to pass under them in safety, and although sufficiently warned and notified by the officers of the railroad company to enable him, by proper diligence and attention, to learn where the points of danger are and how to avoid them, he, from inattention, indifference, carelessness or forgetfulness, fails to take the necessary steps to avoid injury at such places, he is guilty of proximate contributory negligence, which bars his right of recovery for any injury sustained.

5. *When employer under no duty to advise employé of dangers.*—Where the dangers incident to the performance of the duties of an employ-

ment are so obvious as to be seen and known by the exercise of ordinary care and prudence, the employer is under no duty to advise his employés of the existence of such dangers, or to instruct them as to the means necessary to avoid such dangers; the employés, as well as the employer, being held to know the fact of such perils and how to avoid them.

6   *Defects in roadway; when employé assumes the risk incident thereto.* Where an employé, with knowledge of defects in the ways, works or machinery of his employer, continues in the service of his employer after the lapse of a reasonable time for such defects to be remedied or removed, he assumes the risk incident to such defects, and can not recover for injuries which he receives in consequence thereof.

7.   *Action against railroad company; when facts show contributory negligence which precludes recovery.*—In an action against a railroad company by the administrator of a deceased brakeman to recover damages for the alleged negligent killing of plaintiff's intestate, it is shown that a bridge over the track used by defendant was so low as to require a brakeman on a freight train to stoop in order to pass under it safely, which bridge had been maintained in that condition for many years; that the fact of its being so dangerously low was apparent; that plaintiff's intestate was a brakeman on a freight train of defendant, and had been warned of the dangers of said bridge by officers of defendant and by one of his co-employés, and had himself passed safely under it many times, being obliged each time to stoop; that the time of the accident was midday, the sun shining brightly, and there was nothing to obscure the bridge; and that while on top of one of defendant's freight trains, in the discharge of his duties, the plaintiff's intestate failed to stoop as the train was passing under said bridge, and was knocked from said train by the timbers of the bridge and killed. *Held:* There could be no recovery, since the plaintiff's intestate was guilty of negligence which proximately contributed to his injury.

APPEAL from the Circuit Court of Morgan.

Tried before the Hon. H. C. SPEAKE.

This action was brought by the appellee, John T. Banks, as the administrator of the estate of W. A. Thomas, deceased, against the appellant, the Louisville & Nashville Railroad Company, to recover damages for the killing of the plaintiff's intestate, alleged to have been caused by the negligence of the defendant. The action was originally brought against the present appellant jointly with the Memphis & Charleston Railroad Company, the East Tennessee, Virginia & Georgia Railroad Company and the Mayor & Council of Decatur. By amendment the plaintiff dismissed the suit against all the defendants except the present appellant. There was much pleading in the case, but the opinion on the pres-

ent appeal renders a statement thereof unnecessary.

The plaintiff's intestate was, at the time of his death, in the employ of the Louisville & Nashville Railroad Company as a brakeman, and while upon the top of a freight train, in the discharge of his duties, was knocked from one of the cars by the "stringers" of a bridge over Pond Street in the city of Decatur, and killed.

The Nashville & Decatur division of the Louisville & Nashville Railroad has its southern terminus at the junction with the Memphis & Charleston Railroad in Limestone county, about two miles north of Decatur. From that point it uses the track, road-bed and right of way of the Memphis & Charleston Railroad Company across the Tennessee river and through the city of Decatur to a point a few feet south of Church Street. At this point there is another junction, the South & North division of the Louisville & Nashville Railroad Company branching off and running in a southerly direction, while the said Memphis & Charleston Railroad extends on in a westerly direction. Between this latter junction and the Tennessee river there are three streets in Decatur with overhead bridges spanning the Memphis & Charleston tracks, which tracks are used by the Louisville & Nashville Railroad Company's trains. The first bridge is the Church Street bridge, immediately north of the switch or junction, the second is the Pond Street bridge, and the third, or the one next to the river, is the Market Street bridge. These bridges each form parts of streets of the city of Decatur extending over said railroad, which, between said junction or switch south of Church Street and the Tennessee river, is in a cut. This track has been thus used by both of these railroad companies, the appellant here and the Memphis & Charleston, since the construction and operation of the former. The bridges over the Memphis & Charleston track, used by both railroads, were constructed more than forty years ago, and before the construction of the railroad of appellant. The bridges had been built and kept up by the Memphis & Charleston Railroad Company. They were not sufficiently high above the track to permit a man standing on top of a freight car, in the discharge of his duties, to pass under in an erect position, and never had been. In order to pass under in safety a man would have to sit down or stoop so as to clear the stringers of the

[Louisville & Nashville Railroad Co. v. Banks, Admr.]

bridge. The other facts of the case are sufficiently stated in the opinion.

Among the many charges requested by the defendant, to the refusal to give each of which it separately excepted, was the following : ''If the jury believe the evidence, they will find for the defendant.'' There were verdict and judgment for the plaintiff, assessing his damages at $5,000. The defendant appeals, and assigns as error the several rulings of the trial court, to which exceptions were reserved.

HARRIS & EYSTER, for appellants.—1. The general affirmative charge requested by the defendant should been given for many reasons :

*First.* There was no conflict in the evidence as to the manner in which the deceased was killed. The question of contributory negligence on the part of the defendant under the facts of this case, which were not controverted, was one of law for the court, and was not a question of fact to be be submitted to the jury.—*C. & W. R. R. Co. v. Bradford*, 86 Ala. 581 ; *A. G. S. R. R. Co. v. Jones,* 71 Ala. 495.

*Second.* A railroad company is not bound to build its bridges high enough to enable its employés safely to stand upright on the top of its cars, and a brakeman who, in the perforformance of his duty, is injured while in that position, can not maintain an action therefor, although he was suddenly called upon to discharge that duty. In this case, the brakeman had passed the bridge several times in day-light, and was held chargeable with a knowledge of the danger.—*L. & N. R. R. Co. v. Hall,* 87 Ala. 708 ; *Baylor v. D. L. & W. R. R. Co.,* 29 Amer. Rep. 208, note p. 210 ; *Lovejoy v. B. & L. R. R. Co.,* 28 Amer. Rep. 206.

*Third.* Where a brakeman had been warned of the danger of an overhead bridge, and where such danger was open and obvious, and he had passed under it many times, and had had the opportunity of ascertaining its dangerous character, it not admitting of a man standing erect upon the top of a car while passing under it, he is held to have had the danger in contemplation at the time of service, and to have assumed the risk.—*L. & N. R. R. Co. v. Hall,* 87 Ala. 708 ; *Clark v. R. & D. R. R. Co.,* 18 Amer. & Eng. R. R. Cas. 78 and note p. 85 ; *L.*

& N. R. R. Co. v. Boland, 96 Ala. 626; Birmingham R. & E. Co. v. Allen, 99 Ala. 359; Clark v. St. P. & S. C. R. R. Co., 2 Amer. & Eng. R. R. Cas. 240; Gibson v. Erie R. Co., 20 Amer. Rep. 552.

*Fourth.* Where a brakeman on top of a train, in full daylight, was struck on the back of the head and killed by the top of a bridge, through which he had passed daily for three months, and always stooped to avoid injury, the railroad company was held not liable in damages for negligence in permitting the bridge to remain as it was, the employé having waived the patent defect by continuing in the service after knowledge.—Hooper v. C. & G. R. Co., 28 Amer. & Eng. R. R. Cas. 433.

2. The low bridge was one of the incidents of plaintiff's intestate's employment, which he assumed; and having remained in the employment longer than a reasonable time after the discovery of such defect, he was guilty of such contributory negligence as precluded his recovery.—H. A. & B. R. R. Co. v. Walters, 91 Ala. 435; L. & N. R. R. Co. v. Orr, 91 Ala. 548; Eureka Co. v. Bass, 81 Ala. 201; Birmingham R. & E. Co. v. Allen, 99 Ala. 359; C. & W. R. R. Co. v. Bradford, 86 Ala. 583; L. & N. R. R. Co. v. Hall, 87 Ala. 720; L. & N. R. R. Co. v. Boland, 96 Ala. 626.

STEGER, WASHINGTON & JACKSON and MORRIS A. TYNG, *contra.*—1. The defendant was guilty of gross culpable negligence in maintaining a structure which was a constant menace to the lives of its employés. It was negligence for defendant to maintain an overhead bridge so low as to endanger the safety of its employés, whose duties required them to stand upon its moving trains, when that structure could have been made safe at any time without inconvenience to the public, and at small expense.—L. & N. R. R. Co. v. Hall, 87 Ala. 720, s. c. 91 Ala. 112; Ga. Pac. R. R. Co. v. Davis, 92 Ala. 300; B. R. & E. Co. v. Allen, 99 Ala. 359; Johnson v. St. Paul, &c R. Co., 43 Minn. 53; 44 N. W. Rep. 884; Dorsey v. Construction Co., 42 Wis. 583; Powers v. Boston, 5 Amer. R. R. & Corp. Rep., 46; Thomas v. Tel. Co., 100 Mass. 156; Barton v. Springfield, 110 Mass. 131; Dewire v. Bailey, 131 Mass. 169; Lawless v. R. R. Co., 136 Mass. 1; Ferren v. R. R. Co., 143 Mass. 197; Kelley v. Blackstone, 147 Mass. 448; Snow v. Housatonic R. R. Co., 8 Allen

441; *Johnson v. C. & N. W. R. R. Co.*, 1 Amer. & Eng. R. R. Cas. 155; Beach on Contributory Negligence, 364; 1 Sherman & Redfield on Negligence, §§ 198, 199, 200.

2. The principal defense interposed by the defendant was that of contributory negligence on the part of Thomas, the plaintiff's intestate. It is well settled in this State, that contributory negligence is a positive defense, and that the burden of proving it is on the defendant. *Ga. Pac. R. R. Co. v. Davis*, 92 Ala. 300; *O'Brien v. Tatum*, 84 Ala. 186; *C. & W. R. R. Co. v. Bradford*, 86 Ala. 560; *Birmingham St. R. Co. v. Calderwood*, 89 Ala. 247; *M. & E. R. R. Co. v. Chambers*, 79 Ala. 338; *Thompson v. Duncan*, 76 Ala. 334.

3. Whether or not the plaintiff's intestate, by his own negligence contributed to his death, was properly left to the decision of the jury, and the court correctly refused to give the general affirmative charge requested by the defendant. The question of contributory negligence is one for the court only where the facts are undisputed, and but one inference only can be drawn from them by any reasonable mind.—*Tanner v. L. & N. R. R. Co.*, 60 Ala. 621; *Frazer v. S. & N. A. R. R. Co.*, 81 Ala. 185; *M. & C. R. R. Co. v. Womack*, 84 Ala. 149; *Bentley v. Ga. Pac. R. Co.*, 86 Ala. 484; *Florida So. R. Co. v. Hirst*, 30 Fla. 1.

4. The fact that the plaintiff's intestate knew of the defect in the construction of the bridge and remained in the service with this knowledge, was not contributory negligence as contended for by the defendant.—*R. R. Co. v. Chambers*, 79 Ala. 338; *R. R. Co. v. Shearer*, 58 Ala. 672; *Wilson v. R. R. Co.*, 85 Ala. 269; *R. R. Co. v. Bradford*, 86 Ala. 574; *R. R. Co. v. Caldwell*, 89 Ala. 247.

HARALSON, J.—There was much pleading in this case, but the view we take of it relieves us of the necessity to review the rulings of the court thereon.

The case was tried on the pleas of not guilty and contributory negligence on the part of the plaintiff's intestate; and to these issues we confine our investigations.

1. The duties that railroad companies owe to their employés in respect to low bridges has received such careful consideration at the hands of this court, in the opinion of the late Chief Justice Stone, in the case of the *Louisville & Nashville Railroad Co. v. Hall*, 87 Ala.

33

708—a case similar in its essential features to the one in hand—as relieves us from its further discussion at this time. We do no more now than to summarize the principles there settled and apply to the facts of the case before us. It was there said : "When, in crossing a public highway, it becomes necessary for a railroad company to span it with a bridge, it is its duty, if reasonable and practicable, to place the structure at such an elevation as that trains, with their customory employés can pass under it unharmed;" but it was added, that this is not an absolute or unbending requirement, but yields to a reasonable extent to circumstances, as many other natural and social rights must yield to other rights and interests, which duty requires to be conserved ; that in no case would it be permissible to so construct a bridge, that brakemen on top of the cars, in the discharge of their duties, could not avoid danger by bending or stooping; otherwise it would be a nuisance and the company guilty of gross negligence in its structure and maintenance; and whenever such a bridge is constructed below the line of absolute safety, then other duties rest on the railroad company. These other duties are specified to be, that when a brakeman is placed on a freight train, running on a road with which he is not familiar, and such train is to pass under a low bridge or bridges, notice shall be given him of the danger he is to encounter, which notice must be reasonable ; that is, he must be reasonably instructed so as to put him on the lookout, and on enquiry and observation, so that he may not only be warned of the danger attending him, but inform himself of its locality and when to avoid it. But, as was said : "The whole duty is not on the railroad company. The employé must give heed to the notice and instructions given him, and must employ his senses, his reasoning faculties and his attention, alike for his own safety and the welfare of the road. If he has not been sufficiently warned or notified to enable him, by proper attention and diligence, to learn where the points of danger are, then this would be negligence for which the railroad company would be liable. On the other hand, if he has been sufficiently warned or notified, and from inattention, indifference, absent-mindedness, or forgetfulness, he fails to inform himself, or fails to take the necessary steps to avoid the injury, this is negligence, and he should

not recover.'' If the company should build its bridges not of sufficient elevation for absolute safety, without some of the excuses which the law would allow for such a structure under the special circumstances of the case, then negligence is shown, and, unrebutted, would, *prima facie*, authorize a recovery by the plaintiff receiving injury, unless overcome by proof on the part of defendant, that the plaintiff was guilty of proximate contributory negligence. As to what would constitute the contributory negligence, the court said as to the facts of that case, so like this : ''If, under the rules we have stated, the plaintiff was sufficiently notified or warned, and from inattention, indifference, absent-mindedness, or forgetfulness, he failed to inform himself, or failed to take the necessary steps to avoid the injury, this was proximate, contributory negligence, and is also a complete answer to the action. He must avail himself of the instructions given him, or furnished for his use ; and, taking into account the surroundings and perils attendant upon the nature of the service he enters upon, he must bestow such care, watchfulness and caution as ordinarily prudent men would usually exercise in reference to their safety, under like circumstances. There are perils in the very nature of the service, against which prudence can not always guard. Of these the employé takes the risk. He is guilty of contributory negligence, if, in his care, diligence, and watchfulness, he falls below the standard above stated.'' The numerous authorities supporting the propositions above announced are collated in that opinion.

2. Another principle which may be regarded as finally settled is, that if an employé knows of the existence of dangers arising from defects in ways, works and machinery of the company, and continues in its service after the lapse of a reasonable time for the defects to be remedied or removed, he assumes this additional risk, though not incident to his original employment even ; or, as it has been stated in another form, ''If the employé, while engaged in the service, acquires knowledge of any defect in the materials, machinery or instrumentalities used, and notice thereby of an increased risk of danger, and afterwards continues in the service, without objection or notice to the employer, he assumes the increased risk himself ;'' and if he is injured in consequence of such

defect, he is guilty of·contributory negligence.—*Geo. P. R. Co. v. Davis*, 92 Ala. 309 ; *Birmingham R. & E. Co. v. Allen*, 99 Ala. 359 ; *Eureka Co. v. Bass*, 81 Ala. 201.

3.   Again : where dangers are obvious, such as can be seen and known by ordinary care and prudence, in the use of the senses, it is held that the master need not advise his servants of their existence, and instruct them as to the necessary means of avoiding them, since they, equally with himself, are held to know both the fact of the peril and how to avoid it.—*Holland v. Tenn. C. I. & R. R. Co.*, 91 Ala. 444; *L. & N. R. R. Co. v. Boland*, 96 Ala. 632 ; *E. T., V. & G. R. R. Co. v. Turvaville*, 97 Ala. 122.

4.   Now, what, as touching the foregoing principles, do the uncontradicted facts in this case show?   The Pond Street bridge, the instrumental cause of the accident, had been built by the Memphis & Charleston Railroad Company more than forty years ago, at the time of its original construction, and since repaired and maintained by said company ; that this bridge was a part of a public street in the city of Decatur, under its authority and jurisdiction and subject to its control; that the Memphis and Charleston Railroad Company owned the track through the city, which was spanned by this bridge, and that the defendant company, under some agreement with or license from the M. & C. company,—which was not made known,—ever since the completion of its line that far, and making its connection with another line, South, a great number of years ago, had, in connection with the M. & C. company, been using that part of their line, extending north from the depot in Decatur, to the junction across the Tennessee river.   It was further shown that this bridge had been maintained at its original height from the railroad track, during all these years, with the trains of both companies passing under it, coming and going ; that it was 16 ft. 2 in. from the top of the rails to the stringers of the bridge, and the height of an ordinary freight car was eleven feet, leaving but five feet 2 inches from the top of such a car to the stringer of the bridge; and Thomas was a man "slender in build and tolerably tall."   Under this evidence the defendant company was *prima facie* guilty of negligence in running its trains under such a structure, known to it and the M. & C. company and to the authorities of the city of

Decatur, and to any one else whose attention was called to the fact, to be a dangerous bridge for brakemen on any freight train to pass under. It was obviously dangerous to all observant, intelligent railroad employés, whose attention had been directed to the fact, and grew more so to them, as they became acquainted with it, and passed under it. No brakeman over five feet two inches tall, who had ever gone under it once, in an erect position could have failed to know its dangers. There was no witness examined on the subject, who did not say, that it was necessary for brakemen on top of trains to stoop when passing under it, to avoid being injured. It could have been elevated at small expense, and without public inconvenience, and it was negligence for these railroad companies to operate their lines without the bridge being elevated beyond the danger line to brakemen. But under all rules laid down on the subject, it can not be held, under the evidence, that it was willful, wanton or intentional negligence. The circumstances do not imply a willingness on the part of these companies to injure their employés.—*L. & N. R. Co. v. Hall*, 87 Ala. 708; *G. P. Railway Co. v. Lee*, 92 Ala. 270; *Richmond & D. R. R. Co. v. Vance*, 93 Ala. 148.

5. But, was plaintiff's intestate guilty of contributory negligence to overcome the simple negligence of the defendant? The accident happened near midday, at twenty minutes past twelve o'clock. The day was sunshiny and bright; there was nothing to obscure the view of the bridge as the train passed under it. There was some evidence, that the engine as it passed under it might have emitted smoke, which has the tendency to bank at such a place, but that this was done, if important, is not shown. S. D. Armstrong, a witness examined by plaintiff, whose testimony is not rendered doubtful by anything that conflicts with it, settles the question as the unobscured view of the bridge at that time. He says he was standing across the Market Street bridge on the ground at the approach of that bridge, which is three hundred feet north of Pond Street bridge, when the accident occurred; that he could see under Pond Street bridge and there was nothing obstructing his view; that he saw the train pull out from the depot which was over 600 feet away, and saw a brakeman on top of the cars going to set up a brake, as he supposed; that the brakeman

went down at the bridge, and he thought the bridge knocked him off; that when he first saw Thomas on top of the train, he was about middle way between the Church and Pond Street bridges, (and these were admitted to be 300 feet apart), and had his face turned towards witness, (which was towards the Pond Street bridge), and he turned when about two car lengths from the bridge and went towards the rear end of the train, as he thought, to set up a brake ; that he was looking at him all the time till he disappeared ; that Thomas continued going south, with his back to the engine and his face towards the coaches on the rear of the train, until he saw him fall, about the time he got to the bridge, and he seemed to fall between the cars.

It was shown that Thomas entered the service of the defendant in August, 1890. A. J. Corbett testified that he lived in Nashville in 1890, and was the general yard master of the defendant, having charge of the handling and distribution of all cars, and employing brakemen for freight trains ; that in the latter part of August of that year he employed Thomas and started him out on the road as a cub brakeman, to learn the duties before giving him a position ; that on the 4th September, he started him out as an employed brakeman ; that when he first started him out to learn the route, he notified him to be careful and look out for all low bridges, and of each of these three bridges at Decatur, and to be careful and not be knocked off by them; and on the day he started him out as an employé, that witness went over the bridges again and examined him as to all the low bridges on the defendant's road, to see whether or not he was competent to fill the duties of a brakeman, and told him that such low bridges would not clear him and that he must look out for them and stoop, and in cautioning him, he specified the three low bridges at Decatur, between the river and the switch at the yard. Kendall, a brakeman on the defendant's road since 1889, who had been with Thomas on different trips, testified that during the Fall and Winter he told Thomas to look out for these bridges at Decatur they would not clear him. The widow of Thomas testified, that he had been almost continually in the service of the road to the time of his death, missing but few trips, with the exception of two months, when he was off; that he was 26 years old and in good health.

It was shown, also, that on regular service since, he would have passed under this bridge thirty times a month, or 120 times in the four months of his regular employment.

6. To recapitulate then : the accident occurred in broad, open, daylight ; the bridge was not shown to have been in anywise obscured ; it had stood there for thirty or forty years and whatever dangers it threatened to brakemen were open and observable; the intestate had passed under the bridge on top of his train, nearly, if not quite, 120 times and every time he stooped, or he would have been injured ; nobody knew of the dangers of the structure better than he from actual observation and experience; and besides, he had been carefully warned by an officer of the company, at the time he was employed, to look out for this bridge, that it was low ; and a fellow brakeman had also warned him of the danger. So far as notice goes, the company performed its full duty ; and being warned, and having full knowledge of what was an open and manifest peril to himself, of which he took the risk when he entered the service of the company, by his own inattention, absent-mindedness or forgetfulness, he failed to take the necessary steps to avoid the injury which befell him, and this is a complete answer to the action.

7. There is nothing in the argument that the cards containing a warning of low bridges on the line of defendant's road, which were posted in the cars, did not contain these bridges. Those cards only purported to warn of the dangers of bridges on defendant's own line, and not of those on the line of any other company ; and the road between the junction near Decatur and the depot in the city belonged to the M. & C. R. R. Company, and not to the defendant. Aside from that, however, the brakeman was warned—as he might have been as well as by these cards—by an officer of the company of the low bridges in Decatur, before he entered its service, and was shown to have been well acquainted with the bridge and its dangers.

The general charge as requested by the defendant should have been given. We do not consider other questions raised and discussed, since they are not likely to again appear in this cause.

Reversed and remanded.