## Illinois Central R. R. Co. v. Joseph Brown.

1. MASTER AND SERVANT—*Where Servant Assumes Risk of Labor Undertaken Outside the Duties He Was Engaged to Perform.*—Where a person of mature years undertakes any labor outside the duties he was engaged to perform, the risks of which are equally open to the observation of himself and the master, the servant takes upon himself all such risks.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge presiding. Heard in this court at the October term, 1902. Reversed. Opinion filed April 20, 1903. Rehearing denied May 11, 1903.

Statement.—The declaration consists of one original and one additional count. The original count avers that the plaintiff was employed by the defendant as a laborer in duties which were not attended with danger; that he was ordered to desist from his usual occupation and to assist in cutting a hole or space in one of the rails of the defendant, which was a work attended by danger, of which he was ignorant, but of which the defendant knew; that while exercising ordinary care in obeying such order, he

was injured through the carelessness of the defendant, combined with the negligence of another servant of the defendant, who was jointly engaged with the plaintiff in the cutting of said hole.

The additional count alleges that plaintiff was employed as a common laborer, as one of a gang of laborers termed a section gang, which employment was not attended with any hazard or danger, and required no special skill; that the defendant carelessly and negligently ordered him to desist from his employment as a section hand and to join a gang of skilled workmen, and directed him to strike with a hammer a chisel in the hands of a foreman of the gang of skilled workmen, which chisel was held by the foreman upon the rails of the track; that plaintiff had no knowledge of the danger, but defendant had such knowledge, and no instruction was given to plaintiff how to perform said work, and while exercising due care and caution, he struck the chisel, and at the second blow a piece of rail was chipped off and penetrated his eye.

A plea of the general issue was filed to both the original and additional counts.

Joseph Brown, the appellee, had been in the employ of appellant as a section man for nearly four years prior to November 3, 1900, and was a section man at that date. Pat J. Cotter was foreman and Martin Drewek was assistant foreman of the section gang in which appellee worked. November 3, 1900, the roadbed of the appellant was elevated about ten feet, and by reason of this elevation it was necessary to have bridges across the streets and alleys intersected or crossed by the railroad. There was a bridge gang, of which E. C. Leary was foreman, and, November 3, 1900, it was necessary to put in a guard rail on an iron bridge across an alley between Indiana and Michigan avenues in the city of Chicago. About two o'clock in the afternoon of that day Martin Drewek, the assistant foreman of the section gang to which appellee belonged, called appellee and some others of the section gang, and took them over to the bridge in question. When they arrived

there it became necessary to cut a part of the flange off an ordinary rail about fifteen feet in length, in order to make it fit on the bridge as a guard rail. Appellee and others of the section gang did the work of removing the flange. They chipped out the flange to the depth of about one-eighth of an inch the entire length of the rail, and then broke it off. The chipping was done with a hammer and chisel. Appellee testified that the hammer was used in cutting the flange three or four hours by himself and others, Martin Drewek holding the chisel. Also that he helped to cut some other places in the rail, he using the hammer and Drewek holding the chisel After this work was done it was found that the rail would not fit into place, because of certain bolts in the bridge. Appellee testified : "It did not fit on account of the round iron bolts from the bridge sticking up from the iron work." Leary, the bridge forman, testified : "In placing the rail up against the regular track, there was a bolt that fastens the two rails together, and we found it necessary to cut off a little piece of the rail, just the size of a three-fourth inch bolt, so as to let the rail come up to its place. It didn't require a good deal of chipping, about one-fourth of an inch and the thickness of the flange." When it was necessary to cut the rail as last mentioned, appellee testified: "The bridge foreman says to me to take the hammer." The preponderance of the evidence, however, is that Leary, the bridge foreman, spoke to no one in particular. Handler, one of the section men and appellee's witness, testified that Leary said, "Take the hammer and strike the chisel for me." Martin Drewek, witness for appellant, in answer to the question, "Who, if any one, told him to use the hammer," answered, "Well, no man say in particular to use the hammer; the first man that picked up the hammer, he used it." Leary, appellant's witness, testified that he did not call on any particular man, but merely said, "Men, we have got to cut a piece out of this rail in order to get it to fit these bolts; we have got to cut a piece out." Appellee, himself, testified that another man used the hammer in cutting the

piece out, before he used it. Leary held the chisel on the rail, and the second time appellee struck the chisel with the hammer a small particle of steel flew from the rail and penetrated into appellee's left eye, in consequence of which he lost the sight of that eye. There is no evidence of any imperfection in the hammer or chisel which were being used, and the evidence is that the same hammer and chisel which were used when the accident occurred were the same previously used in cutting the flange of the rail.

W. A. HOWETT, attorney for appellant.

O. W. Dynes, attorney for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

The theory of the declaration is that appellee was ordered to do work more hazardous than that he was employed to do, of the dangers of which he was ignorant, and in regard to which he was not instructed. Therefore, to entitle him to recover, this theory must be supported by a preponderance of the evidence. Appellee testified that he helped to lay the steel rails on the tracks, and had to see that they were put down straight, and to drive spikes with a hammer, and to do anything his foreman told him; that he was hired to do anything his foreman told him to do.

Handlier, appellee's witness, testified that the section men sometimes helped the bridge gang on wooden bridges; that he had to do whatever the boss told him; that that was what section men were hired for. Cotter, section foreman, testified that, in his experience as track foreman for more than eight years, he had employed section men to lay tracks and do all general labor, and that the duties of the gang to which appellee belonged were laying down tracks and doing all the laboring, any work to be done on the tracks. This witness was questioned, and answered as follows :

"Q. During the time that plaintiff had been in your employ, had you had occasion to place in guard rails? A. Yes, sir.

Q. Had you at any time had occasion to do any chip-

ping of rails to make them fit? A. Yes, sir. I frequently did that when I had occasion to do it, and maybe twice a week or so. The track chisel was used on this occasion in chipping these rails, and also an ordinary spike hammer used by section men. This was the only time I had seen the plaintiff assist, however, while in my employ, and the only time I had seen him present when other section men were assisting."

Cotter also testified that his men, the section men, were assisting the bridge men, but it was not their duty so to do. The testimony that this was not the duty of the section men is entirely inconsistent with the previous testimony of the witness.

Leary, bridge foreman, was examined, and answered as follows:

" Q. In your experience on the Illinois Central, to what extent, if at all, have you found it customary for section men to do this character of work that these men were doing at the time? A. In our class of work we have to very often, because we don't generally have help enough. I was doing the chiseling."

Leary further testified that the duty of the bridge men was to do the drilling and bolting; that the section men did not assist in the drilling; and that the work which was being done when appellee was injured was cutting or chipping the rail. The evidence shows, and it is matter of common knowledge, that section men are employed to do necessary work on the railway tracks, and the tracks over the bridge in question were part of the railway tracks on which appellee was employed to work. There is no evidence as to who employed appellee, nor as to what was said to him when he was employed. The evidence is merely that, for nearly four years before the accident, he had been in appellant's employ as a section man. The work he was doing when injured, namely, wielding a hammer, was ordinary labor, such as he had been accustomed to in driving spikes on the tracks, and required no special skill. Appellee's counsel rely on the fact, which the evidence tends to prove, that he had not, prior to the accident, done any of the particular work which he was then doing; but, if the work was

I. C. R. R. Co. v. Brown.

not outside the line of his employment, this is immaterial. Our conclusion, from careful consideration of the evidence, is, that the finding that the work in which appellee was engaged when injured was outside the line of work which, as a section man, he was employed to do, is contrary to the weight of the evidence. This is sufficient to dispose of the case. But, even on the hypothesis that the work in which appellee was engaged was outside the line of his employment, we do not think he is entitled to recover.

Appellee is a man of mature years, and, it must be presumed, of ordinary intelligence. He must have known that when a steel rail is chipped by the use of a chisel and hammer, the chips will fly from the rail. He assisted in chipping the flange of the rail fifteen feet in length, and had ample opportunity while so doing to observe that particles were removed from the rail by the chisel. The danger, if any, was quite as obvious to him as it could be to any one. In such case, no instruction to him was necessary. He did not object to doing the work.

In Consolidated Coal Co. v. Haenni, 146 Ill. 614, 625, the court quote with approval the following from Thompson on Negligence:

"Where a person of mature years undertakes any labor outside the duties he has engaged to perform, the risks incident to which were equally open to the observation of himself and the master, the servant takes upon himself all such risks." 2 Thompson on Negligence, p 976, Sec. 7.

We understand this proposition to be thoroughly established. See also, Martin v. Highland Park Mfg. Co., 83 Am. State Rep. 671; Cole v. C. & N. W. Ry. Co., 71 Wis. 114; 2 Bailey's Pers. Inj., etc., p. 1176, Sec. 3462a, and p. 1180, Sec. 3474a.

The judgment will be reversed.