[No. 4770.]

## THE CRIPPLE CREEK SAMPLING AND ORE COMPANY v. SOUZA.

1.  **Master and Servant—Injuries to Servant—Failure to Warn.**

Where a servant of ordinary intelligence and capacity was engaged in chipping certain rolls for crushing ore, and the danger incident thereto was open and visible and as obvious to plaintiff as to defendant, and there was nothing latent, hidden or concealed about it, his employer was not guilty of negligence in failing to warn him of the danger.—P. 395.

2.  **Master and Servant—Injuries to Servant—Contributory Negligence.**

A servant of ordinary intelligence was engaged in chipping certain rolls of an ore crusher. After he had been so engaged for an hour or so and well knew that pieces of steel flew about the room as they were chipped off, upon the request of a co-employee, he gave the latter the hammer with which to continue the work. He thereupon stepped on a platform just behind and a little above his co-employee, and, while standing in this position, directly in the line and direction of the blows, a piece of steel chipping struck and injured his eye. Held, that he was guilty of contributory negligence in voluntarily surrendering his place to a co-employee and taking a position so obviously dangerous.—P. 396.

3.  **Master and Servant—Injuries to Servant—Assumed Risk.**

A servant of ordinary intelligence was engaged in chipping certain rolls of an ore crusher. After he had been so engaged for an hour or so and well knew that pieces of steel flew about the room as they were chipped off, he surrendered the hammer with which he had been striking the chisel for such chipping, and then took a position directly in the line and direction of the blows, and while in this position he was injured by a piece of such steel chipping. Held, that, having continued to work with knowledge of the dangerous character of the employment, and without protest, he assumed the risk.—P. 397.

*Appeal from the District Court of Teller County. Hon. Louis W. Cunningham, Judge.*

Action by Joseph Souza against The Cripple Creek Sampling and Ore Company. From a judgment for plaintiff, defendant appeals.  *Reversed.*

Messrs. WOLCOTT, VAILE & WATERMAN and Mr. H. H. DUNHAM (Mr. F. LEFTWICH and Mr. WILLIAM W. FIELD, of counsel), for appellant.

Messrs. STIMSON & SMITH, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This action by plaintiff is to recover damages for the loss of the sight of his eye, occasioned, as it is alleged, by negligence of the defendant. The defendant's business was that of sampling ore at Crip-ple Creek, and in conducting it use was made of certain rolls for crushing ore. These rolls were made of steel, cylindrical in form, about 36 inches long and 18 inches broad, held in position by iron rods. Their axes were parallel, and the rolls revolved towards each other, crushing such ore as passed between them. From constant attrition these cylinders became irregular upon the surface, and from time to time required to be repaired or "chipped," as the witnesses say, in order to restore their surface uniformity. In the process of crushing, the ore sought the center, rather than the ends, of the rolls, and this resulted in hollowing out the centers so that the work of repair required that the ends should be chipped off in order to produce the desired regularity of surface.

This process of dressing, or chipping, was done by the use of a sledge, or hammer, and a chisel, and required the co-operation of two men, one of whom held the chisel against the roll, and the other struck the chisel with a hammer. The operation itself was not complicated; indeed, it was quite simple, and consisted merely in thus chipping off the more prominent of the surface irregularities which were left on the face of the rolls.

The plaintiff was employed by the defendant in its business as a common laborer in wheeling ore

from the cars and dumping it into a "crusher," through which it passed before it went through the rolls. He was not a skilled mechanic, and before the day of the accident had not assisted in dressing the rolls. On this day he was directed by the defendant to do so, and voluntarily entered upon that duty.

In the complaint, two specific acts of negligence are charged against the defendant as being the proximate causes of the injury: One, the negligence of plaintiff's fellow-servant; the other, failure of defendant to warn plaintiff of the danger attending the repair work which he was called upon to do, of which he had no knowledge. At the trial there was no evidence of negligence of the fellow-servant, and that cause of action was abandoned by plaintiff and withdrawn by the court from the consideration of the jury. The only claim of negligence below, as here, is the failure to warn, and that is the only question before us.

It is to be observed, first, that the complaint only inferentially, or by way of recital, alleges that there was danger of any kind or degree incident to the work in hand. If, however, it be assumed, as asserted by plaintiff, that the complaint in this particular contains the necessary averments, the uncontradicted evidence clearly shows, for two reasons, that the plaintiff was not entitled to recover. In cases of this character it is rare indeed to find such a record as we have here. In not a single material respect is there any conflict in the evidence. Plaintiff's testimony alone defeats his recovery. If there was danger incident to the repairing of the rolls, it was open and visible, and as obvious to the plaintiff as to the defendant. There was nothing latent, hidden, or concealed about it. He is presumed to be a man of ordinary intelligence and capacity, and there is no claim in his behalf that he is of weak mind, or

has not the ability and intelligence of an ordinary person. Though his knowledge of the English language is imperfect, that defect in no wise affects his intelligence or judgment.

There is no claim that defendant was negligent in directing plaintiff to do work outside his regular employment. Indeed, he voluntarily complied with the direction of defendant to assist in repairing the rolls. Such work necessarily and obviously was attended with some danger, though, as we have said, the complaint does not specifically say so, and of this danger no one could be ignorant who made use of his physical senses. Plaintiff himself says that, while he had never seen such work done before, he immediately understood the nature of it the very minute he began it. The rolls could not be repaired without chipping off portions of the steel of which they were composed. One of the two men engaged in the work held the chisel while the other delivered heavy blows upon it with a hammer. Pieces of steel, small or large, as they were chipped off, flew about the room where the work was done, and this was well known to the plaintiff before his injuries were received, and he continued the work without interposing any objection. After he had been engaged in this work for an "hour or so," and knew that fragments of steel were flying in the air thick and fast, a co-employee approached the place where he was working and asked plaintiff to hand him the hammer which just then plaintiff had been wielding, with the remark that he, the co-employee, would show plaintiff how to strike the blows. Thereupon plaintiff gave over the hammer, and stepped on a platform or plank, just behind, and higher up than the level of, those who were engaged in the work. While standing in this position, directly in the line and direction of the

blows, a sliver or piece of steel, dislodged in the course of the work, struck his eye.

· From this statement of the facts, it appears that plaintiff received his injury, not while he was engaged in any work which he was employed, or directed, to do, but that he voluntarily surrendered his place to a co-employee, and took his position in a place so obviously dangerous as to be guilty of contributory negligence. If there was any negligence at all, he was equally guilty with the defendant, and was not entitled to recover. But if there can be any doubt about this point, and if the evidence were conflicting as to the danger of the position which he took and maintained at the time of the injury, it is entirely clear that, in the circumstances of the case, the defendant was not required to warn the plaintiff of the danger of doing the work.

In Dresser's "Employers' Liability," at section 99, relating to the duty to warn, the learned author says: "The master is bound to warn and instruct his servant as to all dangers which he knows, or in the exercise of reasonable care ought to know, and which he has reason to believe the servant does not know and would not by the exercise of reasonable care discover." At section 95 it is said that the servant assumes the obvious risks arising from the condition of affairs, and where he possesses ordinary intelligence and ability and experience, the master is not obliged to warn him of an obvious danger, whether it be known to the servant, or could have been ascertained by him in the exercise of reasonable care.

When plaintiff says he did not know there was any danger from the flying chips, he means that such was his conclusion upon a state of facts that afford no reasonable basis for it. He is a man of ordinary intelligence, and if he had used his eyes, as he says

he did, he could have seen and appreciated the danger that existed. He says he knew that pieces of steel were constantly flying through the air as the result of the operation of dressing the rolls. That they might get into his eyes or hurt him was as apparent to him as to any one. And for him to say that he did not know there was any danger present is to impeach his intelligence and contradict his own statement of the situation. Any man of ordinary intelligence would know the moment he saw this work being done that there was danger to those engaged in it as the result of pieces of steel flying through the air. Plaintiff himself testifies that he saw and understood the character of the work, and he and any man of ordinary prudence ought to know that it was dangerous in character. Cases quite in point in support of this conclusion are: *St. Louis Cordage Co. v. Miller*, 126 Fed. 495, 511, 513; *Kenney v. Hingham Cordage Co.*, 168 Mass. 278, 282; *Rooney v. Sewall, etc., Cordage Co.*, 161 Mass. 153, 160; *Louisville & Nashville R. R. Co. v. Banks*, 104 Ala. 508, 516; *Ill. Cent. R. R. Co. v. Brown*, 107 Ill. App. 512, 517; *Hesse v. Nat. Casket Co.*, 66 N. J. L. 652; *Arizona Lumber, etc., Co. v. Mooney*, 42 Pac. 952; *City of Greeley v. Foster*, 32 Colo. 292; *Wells v. Coe*, 9 Colo. 159; *Iowa G. M. Co. v. Diefenthaler*, 32 Colo. 391.

On the question of plaintiff's contributory negligence, see: *C. C. & I. Co. v. Carpita*, 6 Colo. App. 248, 251; *Denver Tramway Co. v. O'Brien*, 8 Colo. App. 74; *Lord v. Pueblo S. & R. Co.*, 12 Colo. 390; *Stiles v. Richie*, 8 Colo. App. 393.

The judgment should be reversed and the cause remanded with instructions to dismiss the action.

*Reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE STEELE concur.